## McFadden et al. v. Lynn.

1. *Principal and Agent.*—It is a maxim of natural justice applicable with great force in cases of agency, that he who without intentional fraud, has enabled any person to do an act which must be injurious to himself, or to another innocent party, shall himself suffer the injury, rather than the other, whose confidence has been misplaced.

McFadden v. Lynn.

2.   *When Bound by the Fraudulent Acts of an Agent.*—A principal holding out an agent as having authority to represent him, and thereby asserting or impliedly admitting that the agent is worthy of trust and confidence, is bound by all his acts within the apparent scope of the employment.   Hence, the principal may be held for the fraudulent acts of the agent.

3.   *Fraudulent Acts of an Agent—Reasonable Care by Persons Dealing with Him.*—As a general rule, the law does not protect one whose want of ordinary care has resulted in placing his adversary in an unfavorable position.   When, under such circumstances, he seeks to cast the burden which must be borne by one of them, upon the shoulders of the other, he is told that had he exercised such care as might be expected of a reasonably prudent man, the loss would not have occurred.

4.   *Agents—Exclusive Credit.*—A person dealing with an agent known to be such, may give him the exclusive credit, and in such case the creditor can not afterward elect to hold the principal.

5.   *Agents—Liability of Third Persons Dealing with Agents.*—If a creditor voluntarily gives an enlarged credit to the agent of the debtor, or adopts a particular mode of payment whereby the principal is placed in a worse position than he otherwise would have been, the liability of the original debtor is discharged.

**Memorandum.**—Action of assumpsit.   Appeal from a judgment for the plaintiff rendered by the Circuit Court of Menard County; the Hon. CYRUS EPLER, Circuit Judge, presiding.   Heard in this court at the November term, A. D. 1892.   Opinion filed June 5, 1893.

APPELLANTS' BRIEF, T. W. McNEELY, ATTORNEY.

An implied or apparent power of an agent is never construed to extend beyond the obvious purposes and general usage and course of the business of the agency.   The power exercised must be of itself necessary, usual or appropriate to the end contemplated by the agency.   Springfield Engine & T. Co. v. Greene, 25 Ill. App. 106.

A distinction is drawn between acts within the apparent powers of the agent and acts apparently, but not really within his powers.   For in the former the principal is liable, as he is responsible for the appearance of his agent's powers, but not for the latter, as the agent alone is responsible for the appearance of his acts.   2 Kent, 621, note 1; Grant v. Norway, 2 Eng. L. & Eq., 337; Hubberstey v. Ward, 18 Ib. 551.

Agents are held to the line of their employment, and any

deviation can only be allowed by usage, by the custom of the trade, or by special authority from the principal. Hence an agent to sell on credit can not collect. Clark v. Smith, 88 Ill. 298; Abrahams v. Weiller, 87 Ill. 179. To solicit orders, can not collect. Reynolds v. Ferree, 86 Ill. 570. To sell, can not receive the contract of sale. Diversy v. Kellogg, 44 Ill. 114. Story on Agency, Secs. 78, 101. To collect a note, can not commute the debt or release, or pledge the note. Padfield v. Green, 85 Ill. 529. To make a contract, can not receive money due on the contract. Thompson v. Elliott, 73 Ill. 221. To loan money, can not collect. Cooley v. Willard, 34 Ill. 68. To pay his own debt, can not use property of his principal. Ingersoll v. Banister, 41 Ill. 388. He can not satisfy debt of his principal, except for money, or to assume and pay the debt and release the debtor. To pay cash or draw bills, can not make the principal a debtor by purchase on credit. Parsons v. Armor, 3 Peters, 413.

A party dealing with an agent is bound, at his peril, to see the authority of the agent before dealing with him. Peabody v. Hoard, 46 Ill. 242.

### APPELLEE'S BRIEF, N. W. BRANSON, ATTORNEY.

" The rule is that the principal is liable for the torts of his agent in the course of his employment, although the principal did not authorize or justify, or participate in, or even if he disapproved of them. If the tort is committed by the agent in the course of his employment, while pursuing the business of his principal, and is not a willful departure from such employment and business, the principal is liable, although done without his knowledge." Keedy v. Howe, 72 Ill. 133, 136; Moir v. Hopkins, 16 Ill. 313, 314; G. & C. U. R. R. Co. v. Rae, 18 Ill. 488; Mason v. Bauman, 62 Ill. 76, 81; Cooley on Torts, 534; Story on Agency, Sec. 452; Johnson v. Barber, 5 Gil. 425, 430; Hungate v. Reynolds, 72 Ill. 425.

A principal is responsible for the misrepresentations of his agent, in the apparent scope of his authority, as to third

parties affected by the acts or words of the agent; it is the apparent scope of the agent's authority, and not his actual instructions that must govern.  Griswold v. Gebbie, 126 Penn. St. 353, 19 Am. St. Rep. 878; Wachter v. Phœnix Ass. Co., 132 Penn. St. 428, 19 Am. St. Rep. 600; Millville, etc., Ins. Co. v. Mechanics, etc., Ass., 43 N. J. L. 652; Wood on Insurance, Sec. 392; Union Mut. Life Ins. Co. v. Kirchoff, 133 Ill. 368; Wilson v. Thompson, 1 Metc. (Ky.) 123; Keller v. Singleton, 69 Ga. 703; Rhoda v. Annis, 75 Me. 17, 46 Am. R. 354.

" Where the agent is authorized to transact all the principal's business of a certain kind, the very breadth of the employment, and the variety of the duties to be performed, necessarily involve more or less of discretion and choice of methods, and render impracticable, if not impossible, much of particularity or precision, either as to the exact means and methods to be employed, or as to the scope and extent of the authority itself.  Where so little is expressed, more may well be implied.  The fact of such an authority of itself presupposes a general confidence bestowed upon the agent, and a general committal to his discretion and judgment of all beyond the essential objects to be attained, and the outlines of the course to be pursued."  Mechem on Agency, Sec. 285; Haskel v. Starbird, 152 Mass. 117; 23 Am. St. Rep. 809; Reynolds v. Witte, 13 S. C. 5; 36 Am. Rep. 678; Bishop on Contracts, Sec. 1112; Barwick v. English Joint Stock Bank, Law Rep. 2 Ex. 259; Mackay v. Com. Bank of New Brunswick, Law Rep. 5, P. C. C., 394; 9 Eng. Rep. 202; Swire v. Francis, 3 App. Cases 106, 24 Eng. Rep. 56.

Opinion of the Court, Wall, J.

Appellee recovered judgment against appellants for $570.63, for the value of certain grain sold by the former to the latter through Hubbard, their agent.  It appears from the evidence that appellants were in the business of buying and selling grain at Havana.  They had an elevator with cribs and other appliances for handling and storing grain at

Oakford, and employed said Hubbard to act as their agent at the latter place, giving him general charge of their business at that point. He acted in that capacity for several years, and besides carried on a business of his own in the sale of hardware, agricultural implements, etc.

According to the arrangement between appellants and Hubbard, the regular course of business required the latter to pay for grain purchased by giving checks in favor of the vendors, upon appellants, specifying the number of bushels and the price paid. These checks were collected through the local banks.

The appellee had a quantity of wheat in the elevator. He had placed it there on storage at different times, and on the 1st day of September, 1892, he sold it to Hubbard for the appellants. The total amount to be paid therefor was $591.53. Appellee then owed Hubbard $20.90 for merchandise.

For the difference of $570.63, Hubbard gave appellee his check on the First National Bank of Petersburg.

At the same time he drew a check in favor of appellee for the whole amount, $591.53, on appellants, and requested appellee to indorse it, which appellee did, signing his name in blank, and handed the check back to Hubbard.

Which one of these checks was drawn first, and just what was said by Hubbard to appellee as his reason for wishing to transact the business in that way, are matters of some dispute.

It is apparent, however, that it was all one transaction, and that whatever Hubbard did say, and whatever reason was assigned, appellee was induced to consent, though somewhat reluctantly, supposing Hubbard's check would be duly honored by the bank on which it was drawn; but it was not paid, for want of funds. Hence this suit.

It seems that several times before, just such transactions occurred between the parties, as the appellee was in the habit of selling his grain to Hubbard, and was very often at such times in his debt for merchandise previously furnished, and all checks so drawn, before this one, were duly paid.

McFadden v. Lynn.

It is not doubtful that appellee knew it was the general custom of Hubbard, when he bought grain, to draw a check in favor of the seller for the amount of the purchase upon appellants, but it is not shown that he knew of any special arrangement between appellants and Hubbard, by which the latter was restricted to that mode of making payment. A general agent is a person whom a man puts in his place to transact all of his business of a particular kind, or at a particular place. 2 Kent Comm. 9th Ed. 620. The acts of such an agent will bind his principal so long as he keeps within the general scope of his apparent authority, though he may act contrary to his private instructions, and this rule is necessary to prevent fraud and encourage confidence in dealing.

But an agent, constituted for a particular purpose and under a limited power, can not bind his principal if he exceeds that power.

The principal is bound by the acts of his agent if he clothe him with powers calculated to induce innocent third persons to believe he had due authority to act in the given case.

In the present instance Hubbard was the general agent of appellants to represent them in their grain operations at Oakford, with special instructions as to the mode of paying for grain. Appellee knew that payments were usually made in the way thus required.

The elevator, cribs, scales and other appliances for the purpose, were all in Hubbard's hands, and he was held out to the world as authorized to buy grain for appellants. This was, indeed, his authority. He was clothed with full power, apparently, for the purpose, and it does not appear that they ever interfered with his transactions, which ran up into very considerable amounts in the aggregate.

As already stated, Hubbard had no right to check on appellants for anything except grain actually purchased, but by the arrangement which he effected with appellee he was enabled to use the check given appellee to increase his credit at the bank for the purpose of meeting

a draft upon him then there for collection, and when his check in favor of appellee was presented there was nothing left with which to pay it.

It is a maxim of natural justice, applicable with great force in cases of agency, that he who, without intentional fraud,.has enabled any person to do an act which must be injurious to himself or to another innocent party, shall himself suffer the injury rather than the other, whose confidence has been misplaced.

So that a principal holding out an agent as having authority to represent him and thereby asserting or impliedly admitting that the agent is worthy of trust and confidence must be bound by all his acts within the apparent scope of the employment. Hence the principal may even be held for the fraudulent acts of the agent when done in the course of the employment.

It is necessary, however, that the third party should act in good faith, use reasonable care, and that he should rely upon the principal.

That Hubbard committed a fraud for which one of the parties to this suit must suffer is very certain. That appellants placed him in a position where he had the general opportunity, is also certain. That appellee gave him the special means by which he was enabled to commit the fraud is also certain. Appellee had a right to consider him trustworthy because appellants evidently so regarded him. But how far would this fact justify him in following an irregular and unsafe course of business to the detriment and injury of appellants?

As a general rule the law does not protect one whose want of ordinary care has resulted in placing his adversary in an unfavorable position. When, under such circumstances, he seeks to cast the burden which must be borne by one of them, upon the shoulders of the other, he is told that, had he exercised such care as might be expected of a reasonably prudent man, the loss would not have occurred. The term "innocent," as here used, describes one who not only acts in good faith, but with reasonable care. If

McFadden v. Lynn.

he neglects to use such care he may mislead and prejudice the other, who has the right to presume that such care has been used.

One dealing with an agent, known to be such, may give him the exclusive credit, and in such case the creditor can not afterward elect to hold the principal. Story on Agency, Sec. 447; 2 Kent. Comm., 9th Ed., 630.

" It is a general principle that if a creditor voluntarily give an enlarged credit to the agent of the debtor, or adopt a particular mode of payment, whereby the principal is placed in a worse situation than he would otherwise have been, the liability of the original debtor is discharged. * * * A receipt, given by a creditor to an agent or broker, does not necessarily, of itself, operate as a discharge to the principal, nor has it that effect, unless the principal appears to have dealt differently with his agent, in consequence of the receipt, as by passing it in his accounts and giving him further credit upon the face of the voucher. But where the receipt is the means of accrediting the agent with his principal, or altering the situation of the latter, the creditor can only resort to the agent." Paley on Agency, Lloyd's Ed., Secs. 250 to 254; Story on Agency, Sec. 449 and notes.

In Heald v. Kenworthy, 10 Exc. 739, cited in Story, Ibid., Parke B., said : " If, for example, the principal is induced by the conduct of the seller, to pay his own agent, on the faith that the agent will settle with the seller, in such case the seller would be precluded from recovering, as it would be unjust for him to do so."

The order drawn by Hubbard, upon the appellants, was in the following form :

" No. 1513.            OAKLAND, ILL., Sept. 1, 1892.

Pay to T. T. Lynn, or order, five hundred and ninety-one and 72–100 dollars, ($591.72), for 910.25 bushels of wheat, at 65 cents per bushel.

O. F. HUBBARD.

To McFadden & Co., Havana, Ill."

On the back of the order is indorsed :

" T. T. Lynn.   Pay C. E. Coppell, Cashier, or order, for collection, First National Bank, Petersburg, Ill.

J. W. ROBBINS, Cashier."

On the face :

" Mason County Bank.   Paid, 1892.   Havana, Illinois."

Appellee knew that this was the usual and customary way of paying for grain bought by Hubbard for appellants, indeed, it was the only way that is disclosed by the evidence, and he must have known the effect of indorsing the check in blank and returning it to Hubbard.   He says that Hubbard " wanted the order to show in his settlement " with appellants.   Of course this was the use that would be made of it and he must have known that appellants would rely upon the paid check as proof that the wheat had been regularly paid for.   It was, when indorsed, in effect a written receipt for the amount in payment of the wheat therein specified, and by indorsing it, appellee not only acknowledged the receipt of the money, but he required appellants to pay the check to the legal holder.

According to the evidence he hesitated a little to return it so indorsed to Hubbard and take Hubbard's check on the bank for the balance, though previous transactions of the same sort had turned out safely.   For some reason he was apprehensive, but he did it.   He knew he was incurring the risk which was apparent, and he knew the appellants would necessarily pay the money to the holder of the check and that in the ordinary course of things they would have no reason to suspect any misappropriation of the money by Hubbard.   He must have known, if he reflected a moment, that he was placing it in Hubbard's power to misapply the money.   Not only so, but that it would be necessarily intermingled with Hubbard's other funds and would be subject to all checks and acceptances which might be legally chargeable against him by his banker.   The very thing which did take place, was liable, plainly so, to occur.   When appellee indorsed and surrendered this check he gave up the absolute liability of appellants and accepted the personal credit and responsibility of Hubbard, and this for the sake of a settle-

McFadden v. Lynn.

ment of his private account with Hubbard in which appellants were not concerned. It would be grossly unjust to permit him to thus mislead the appellants into paying the amount of the check and then require them to pay a second time.

While it is true appellants held Hubbard out as their general agent and evidently regarded him as trustworthy and reliable, yet, as appellee knew, they paid for grain in the way stated by honoring checks given therefor which were their vouchers in the premises. Though exhibiting their general confidence in him they prudently adopted a mode of doing business which would afford ample protection to those who sold their grain and at the same time protect them against any failure of their agent to pay for grain sold to him for them.

Hubbard was transacting business of his own, and if he were permitted to handle their funds and mingle the same with his, he might, in case of misfortune in his affairs, involve them in liability to the sellers of grain. Therefore the mode adopted, while consistent with their confidence in Hubbard's honesty, was not only judicious, but was indispensable in order to protect them and the sellers of grain against loss in case of Hubbard's insolvency. When following the course thus provided the appellee was perfectly safe. By taking a different course a risk was incurred. How can he ask appellants to bear the consequences when they did not know the risk had been taken, and had in no wise induced him to take it?

When he thus chose to place it in the power of Hubbard to misapply the money, by depositing it where it would be exhausted by his other liabilities, by check or acceptance, he can not call upon appellants to make up this loss. They had no notice of any irregularity. Hubbard's name does not appear as an indorser, for appellee indorsed in blank.

He is estopped to deny the *prima facie* aspect of the transaction. By his own act, he placed the appellants in a position from which they can not retreat, whereby they must suffer if compelled to respond to his present claim. By indorsing the check and by delivering it so indorsed, the right

to the money passed from him to the legal holder.   He can not be permitted to repudiate the admission implied by the indorsement nor to say that he did not accept Hubbard's bank check in exchange for the balance due him on this check.

Another aspect of the case, much discussed in the briefs, remains to be noticed.

It appears that Hubbard became heavily involved, so much so, that when he suspended operations and terminated his agency, his indebtedness to appellants, actual and contingent, amounted to some $13,000, for which he attempted to secure them by a mortgage for $10,000 upon his realty, and a judgment by confession for $5,000, thus giving them a lien upon all his property.

It is insisted on behalf of appellee, that the appellants, by virtue of the security thus obtained, recognized the validity of the claim of appellee and are secured against loss if they pay it.

As fairly construed, the proof merely shows that the security was intended to cover only such matters growing out of the acts of Hubbard as were valid claims against appellants. They were not at liberty to assume anything not binding on them, nor would the security cover anything gratuitously assumed.

Hubbard's unsecured creditors would have the right to hold appellants to this position and insist that when the liabilities legally chargeable were not, the property of Hubbard remaining should be, subject to his unsecured indebtedness.

We are of opinion the judgment is contrary to the merits. It will therefore be reversed and the cause remanded.