(118 App. Div. 685)

WILMERDING et al. v. POSTAL TELEGRAPH CABLE CO.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

PRINCIPAL AND AGENT—FRAUD OF AGENT—SCOPE OF EMPLOYMENT—LIABILITY
OF PRINCIPAL.

Where the messenger of a telegraph company, authorized to present memorandum slips of telegrams sent and receive payment of the charges due thereon, presented a customer fictitious memorandum slips, which

were paid by him and the money retained by the messenger, the telegraph company was liable to the customer for the money so paid, though the customer had a letterpress copy book of telegrams, and could have ascertained that he was being defrauded by a comparison of it with the memorandum slips presented.

Laughlin and Scott, JJ., dissenting.

Appeal from Trial Term.

Action by John C. Wilmerding and others against the Postal Telegraph Cable Company for money paid by mistake. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William W. Cook (Edmund L. Mooney, of counsel), for appellant.

Blumenstiel & Blumenstiel (Edwin Blumenstiel, of counsel), for respondents.

CLARKE, J. The plaintiffs are members of a copartnership known as Wilmerding, Morris & Mitchell, engaged in business in the city of New York. The defendant is a domestic corporation conducting a general telegraph business. The course of dealing between plaintiffs and defendant, continuing for about 10 years, has been as follows: When the plaintiffs desired to send a telegram they would ring the messenger call in their store and a messenger would be dispatched from the local office of the defendant in the neighborhood, under the charge of one Morrell, who would receive the message and carry it to the telegraph office, where it would be dispatched in the regular course of business. Upon the following day a messenger from the defendant's office would present to plaintiffs' assistant cashier in charge of the petty cash (one White) a printed slip or form, headed "Message Memorandum," containing the date and the words:

"To Postal Telegraph Cable Company. For convenience in verifying accounts, please preserve the following items of messages sent."

There would then follow "To," the address being written in, followed by the amount of the charge, and opposite the word "signature," inclosed in brackets, the name of the person sending the message. These slips were made out by the telegraph company, and the name appended thereto was not a signature, but was for the purposes of identification, and in the genuine slips was written by the agent in charge of the defendant's office. Upon the presentation of the slip, which performed the function of a bill, to the cashier in charge of the petty cash, the amount called for thereon was given to the messenger in payment of the services rendered, and the slip was kept as a voucher by the plaintiffs. During the seven months under consideration in this action a large number of slips upon which payments were made were presented by, and the amounts called for thereon paid to, a messenger of the defendant who was between 16 and 18 years of age, named Murphy, and the balance by one other boy not particularly described or identified; but it appears that all of the slips were presented by one or other of these two boys, sent by the defendant and known to the assistant cashier. During this period 517 slips were thus

presented for payment, and $709.49 were paid thereon to these two messengers. Upon investigation it appeared that 199 of these slips, upon which were paid $117.50, were slips made out by the operator, Morrell, and represented charges for services by the defendant for transmission of telegrams for the plaintiffs, and for which the defendant gave credit to the plaintiffs; but 318 slips, upon which $592.99 were paid to the messenger boys, were forged memoranda, and were fictitious, in that no services were rendered by the defendant for the plaintiffs in accordance with the tenor of said forged or fictitious memoranda. It is for said sum so paid that this action was brought, and for which judgment in favor of the plaintiffs has been entered, from which this appeal is taken.

The question is: Is the defendant responsible to the plaintiffs for the dishonesty of its messengers? It is conceded that so far as the genuine slips are concerned, made out by the defendant's agent, Morrell, in charge of its office, and given by him to the messengers, they were thereby constituted the agents of the defendant for the purpose of collecting from the plaintiffs the amounts due for services rendered as appeared upon the face of such slips; that if, after payment by the plaintiffs to such messengers upon such genuine slips, the messengers had appropriated the sums paid themselves, or, having transmitted the money to the office, the agent there in charge had appropriated it to himself, the defendant would have been liable, for the collections would have been within the direct scope of the employment of the agent, and the principal, for the agent's wrongdoing would have been obliged to respond. But the defendant claims that these messengers were not in any sense the general agents of the defendant; that their employment was limited to the presentation of the genuine slips as given to them by the general agent, Morrell, and the collection of the sums called for thereby; that when they forged slips, and upon such forged slips collected and appropriated the sums apparently called for, they acted independently and outside of their respective agencies; and that therefore the defendant is not liable for such fraudulent conduct.

It seems to me that this contention is not sound; that the liability of the principal does not depend upon the general agency of the agent, but upon the question whether the acts done were within the apparent scope of the authority of the agent; and that, when it had clothed these messengers with the power to present slips and receive payment therefor, it is responsible for the wrongful acts of such agents committed in that kind of work. The fictitious slips were intermingled with the genuine. They were both presented by the same boys to the same assistant cashier in the same ordinary way in which the dealings between the parties had been conducted for a very considerable period of time. The plaintiffs had the right to assume that the agents of the defendant, admittedly employed by it and clothed with the power to collect money on the presentation of slips, were honest, and that the slips presented by them were genuine. The assistant cashier testified that at the time he paid these slips he "thought they were in the operator's handwriting. Seeing that handwriting every day, I got accustomed to it, looking at it." He did not send the telegrams or ring

for the messengers.  He was in charge of the petty cash disbursements of the business.  He had been in the habit of receiving these slips from these same boys and of paying them for a long time, and there was nothing which. excited his suspicion.  There was nothing out of the common which put him upon his inquiry.

An employer who has put it within the power of his employé to defraud a third person by intermingling fraudulent and genuine bills and collecting money therefrom should be held responsible to an innocent third party for the dishonesty of his employé.  It is unnecessary to cite numerous authorities, because, as it seems to me, the recent case of Birkett v. Postal Telegraph Cable Company, 107 App. Div. 115, 94 N. Y. Supp. 918, affirmed unanimously 186 N. Y. 79, 79 N. E. 1101, without an opinion, is conclusive.  The defendant seeks to distinguish that case from the one at bar, because in the Birkett Case the agent was a general agent in charge of the office of the defendant.  Conceding that the messengers in the case at bar were not the general agents of the defendant, yet, when acting within the scope of their authority, the same rule applies as to a general agent, and as to third parties, when a special agent acts within the apparent scope of his authority, the rule of responsibility is the same.  These messengers, having the direct authority to collect upon genuine slips, presenting, intermingled with said genuine slips, forged slips not distinguishable upon ordinary examination from the genuine slips, their acts were within the apparent scope of their authority, and hence the Birkett Case is applicable.  In that case Harrington was the agent in charge of the defendant's office in Penn Yan.  Birkett, like the plaintiffs in the case at bar, was a regular customer; but, instead of having the bills presented upon the next day after the transmissal of the message, as in this case, an itemized statement was presented to him each month on blanks furnished by the defendant for the purpose, and which he paid mainly by check as they were rendered.  He accidently discovered an overcharge, which led to an investigation disclosing that he had been systematically mulcted by Harrington, who confessed his guilt and absconded.  An examination proved the extent of these false accounts, consisting of fictitious items and charges, to be $2,248.24.  Harrington had remitted proper sums and rendered correct statements of the account to the defendant.  Mr. Justice Spring said:

"The rule of law governing this case is elementary.  A principal is liable to a third person for the misconduct of his agent committed in the line of his employment, even though the offense was in excess of his authority and the principal did not authorize, justify, or know it.  [Citing cases.]  Appellant contends that Harrington was not acting in the line of his employment in making false entries in the account rendered to the plaintiff.  * * *  He was acting within the scope of his agency in receiving the money for the benefit of the defendant.  If the plaintiff had paid the exact amount due and Harrington had misappropriated it, the plaintiff could not have been compelled to respond over again on account of the misconduct of Harrington.  Of course, Harrington was not authorized to collect money of the plaintiff for telegrams never transmitted; but it was his duty to collect the sums actually due for their transmission.  If he collected more than was due, he did that because of his agency.  The agent, in his dealings with the plaintiff, turned out to be dishonest while acting in that capacity.  His delinquency does not exonerate the defendant to the plaintiff, who relied upon the manifest authority of Harrington.  The principal cannot so easily evade liability for

the misdeeds of its agent. * * * The rule here applicable is founded on the old maxim that the principal is responsible for his agent, not the innocent third person. The plaintiff was furnished with the tariff books of the defendant, and by an examination of each statement with the tariff rates could have ascertained that he was being cheated. It is urged that he was negligent in failing to make these examinations, and should not, therefore, be permitted to recover. The plaintiff was not obliged to act on the assumption that Harrington was defrauding him. He had a right to assume he was honest, and was not called upon to enter into any inspection of the items of his account for the purpose of discovering either fraud or mistake."

Applying the principles there laid down to the facts appearing in the case at bar, there seems to me no escape from the proposition that the defendant is liable. All the cases which have held the principal responsible for the dishonest acts of the agent have assumed that the said sets were ultra vires, but the responsibility of the principal was based upon the fact that he had lodged the power in the agent to commit the act. The appellant urges that the plaintiffs' neglect in not discovering the fraud committed upon them precluded a recovery.

"In an action to recover money paid under a mistake of fact, it is no defense that by the exercise of proper diligence plaintiffs might have avoided the error, or that defendant cannot be restored to his original position upon paying back the money." Abb. Cyc. Dig. 10, p. 809.

"It seems from a long series of cases * * * that, where a party pays money under a mistake of fact, he is entitled to recover it back, although he may at the time of payment have had means of knowledge of which he has neglected to avail himself." Kingston Bank v. Eltinge, 40 N. Y. 397, 100 Am. Dec. 516.

"If the money is paid under the impression of the truth of the fact, which is untrue, it may, generally speaking, be recovered back, however careless the party may have been in omitting to use diligence to inquire into the fact." U. N. Bank of Troy v. Sixth Nat. Bank of N. Y., 43 N. Y. 455, 3 Am. Rep. 718.

"Negligence upon the part of one who by mistake pays to another a sum of money to which the latter is not entitled does not defeat the right of action of the former to recover back the money so paid." Lawrence v. American Nat. Bank, 54 N. Y. 433.

The appellant claims, however, that a new rule has been established by Critten v. Chemical Nat. Bank, 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529. In that case the plaintiffs kept a large and active account with the defendant, and the action was to recover an alleged balance of a deposit due to them from the bank. Plaintiffs had in their employ a clerk whose duty it was to fill up the checks which it might be necessary for the plaintiffs to give in the course of business, to make corresponding entries in the stubs of the check book, and to present the check to one of the plaintiffs for signature, together with the bills for payment for which they were drawn. This clerk, from time to time, after the checks had been so signed, obliterated by acids the name of the payee and the amount specified, made the checks payable to cash, and raised the amount. He would draw the money on the check so altered from the defendant's bank, pay the bill for which the check was drawn in cash, and appropriate the excess. The court said:

"The relation existing between a bank and a depositor being that of debtor and creditor, the bank can justify a payment on the depositor's account only upon the actual directions of the depositor."

And, after speaking of the custom of balancing of the pass book and the return of the checks as vouchers, it was said:

"Considering that the only certain test of genuineness of the paid checks may be the record made by the depositor of the checks he has issued, it is not too much, in justice and fairness to the bank, to require of him, when he has such a record, to exercise reasonable care to verify the vouchers by that record."

It seems to me that the doctrine of that case should not be extended, and that the relations of a depositor to his bank upon which he draws checks, entering the amounts therefor upon the stubs in his check books, which checks are fraudulently altered by one of his own employés, who presents the same to the bank and receives the money thereon, said check being returned to the depositor with his pass book when balanced, presents a very different case from the one at bar. Here one employé of a business concern sends telegrams in the regular course of business. No entry is made of the amounts due thereon, as that is fixed by the telegraph company. The next day a bill is presented by accredited agents of the telegraph company, some genuine and some false, all bearing the same general appearance, for small amounts, to the cashier in charge of the petty cash. The only way of verifying the bills is by comparison with the letterpress copy book kept by the department sending the telegrams. The small amounts on each bill, the regular course of dealing, the apparent authenticity, the fact that the orders to pay are drawn, not by the plaintiffs, but by the defendant, seem to me to differentiate the two cases.

Further, the Birkett Case, supra, was decided by the Court of Appeals long after the decision in the Critten Case. In the Birkett Case the point now urged seems to have been raised. Said Mr. Justice Spring:

"The plaintiff was furnished with the tariff books of the defendant, and by an examination of each statement with the tariff rates could have ascertained that he was being cheated. It is urged that he was negligent in failing to make these examinations, and should not, therefore, be permitted to recover. The plaintiff was not obliged to act on the assumption that Harrington was defrauding him. He had a right to assume he was honest, and was not called upon to enter into any inspection of the items of his account for the purpose of discovering either fraud or mistake."

It would have been as easy for Birkett to have discovered the fraud or mistake in the bills rendered by the agent of this defendant in that case as it would have been by the plaintiffs to have discovered the frauds of the agent of this defendant in this case, and, as the learned Court of Appeals, with the question fairly presented, did not apply the doctrine of the Critten Case to the Birkett Case, it follows that it does not apply to this case.

The judgment appealed from should be affirmed, with costs.

PATTERSON, P. J., and INGRAHAM, J., concur.

LAUGHLIN, J. (dissenting). I dissent from the affirmance of this judgment upon the ground that in my opinion the plaintiffs should have discovered that they were paying bills for telegrams which

they had not sent, and that the defendant, which neither authorized the collection of these fraudulent bills nor received the moneys, should not be compelled to pay the damages, which might have been avoided by the exercise of reasonable care on the part of plaintiffs in the supervision of their own affairs.

SCOTT, J., concurs.