SAM BERKOVITZ, APPELLANT, V. MORTON-GREGSON COMPANY ET AL., APPELLEES.

FILED MAY 8, 1924.    No. 22730.

1. **Principal and Agent:** LIABILITY OF PRINCIPAL: ESTOPPEL. Where one, who is acting as a salesman and collecting agent for his principal, and, without the knowledge or consent of the latter, fraudulently alters and raises footings or totals on the statements of account sent him for collection, and presents such altered statements to and collects from the debtor more than is due his principal, and, without the knowledge, consent or authority of his principal, uses the excess so collected to settle claims for shortage or spoilage of other customers of his principal, in the absence of a showing that the claims so settled were just charges against the principal, the latter cannot be said to have received and retained the benefits of the fraudulent conduct of his agent, and to be thereby estopped from denying liability to the principal's debtor for the fraudulent conduct of the agent.

2. ———: ———. M.-G. Co., engaged in the packing industry at Nebraska City, Nebraska, employed K. as its salesman and col-

lector for the city of Omaha. K. obtained orders for merchan-
dise from B. and mailed them to his principal. The latter filled
and shipped the orders to B., and at the same time mailed to him
the invoice for each order filled, showing the amount due for
such order. The account was payable weekly, and at the end
of each week M.-G. Co. prepared and mailed to K. a correct state-
ment of B.'s account for the week. K. fraudulently altered the
footings or totals of the statements to show larger amounts than
were actually due, which he presented to and collected from B.
In an action by B. against M.-G. Co. to recover the amount of
the excess collections so made, *held*, that K., in presenting the
altered statements of account, was acting in the line of his em-
ployment and within the apparent scope of his authority, and
that M.-G. Co. is liable to B. for his loss occasioned by the fraud
of K.

APPEAL from the district court for Douglas county: WIL-
LIAM A. REDICK, JUDGE. *Reversed.*

*Harry Fischer, W. H. Hatteroth* and *J. Gerald Mac Veigh,*
for appellant.

*Montgomery, Hall & Young, Gaines, Van Orsdel & Gaines* and *H. M. Johnsen, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and
GOOD, JJ.

GOOD, J.

Sam Berkovitz, the plaintiff, brought this action against
Morton-Gregson Company, B. F. Kleeberger and the State
Bank of Omaha, to recover payments made in excess of
amounts due on accounts of Morton-Gregson Company
against plaintiff for merchandise. Trial was had to the
court without a jury, resulting in a judgment for plaintiff
as against Kleeberger, and in favor of defendants, Morton-
Gregson Company and State Bank of Omaha. Plaintiff
appeals. The case presented in this court involves only the
liability of Morton-Gregson Company to plaintiff.

At the time of the transactions, out of which this con-
troversy arises, plaintiff operated a retail meat-market in
Omaha, Nebraska, and Morton-Gregson Company was en-
gaged in the meat-packing industry at Nebraska City, Ne-

braska. The packing company employed Kleeberger as its salesman and collector for the Omaha territory. In the course of his employment as salesman, Kleeberger called upon the plaintiff and took several orders each week for merchandise which were forwarded to his principal at Nebraska City. These orders were filled and shipped to plaintiff, and an invoice for each order filled was mailed to plaintiff. The accounts for the merchandise thus sold were payable weekly. At the end of each week, Morton-Gregson Company prepared and sent to Kleeberger a statement of plaintiff's account. On the following Monday morning Kleeberger would call upon the plaintiff and collect the amount due. The amounts so collected were deposited in the Omaha National Bank to the credit of Morton-Gregson Company. This company had provided Kleeberger with a rubber stamp, as follows: "Pay to Omaha National Bank, Omaha, Neb., or order. Morton-Gregson Co., Nebraska City, Neb. 208," which he was required to stamp upon the back of the checks that were payable to Morton-Gregson Company. Plaintiff paid the accounts as presented by checks drawn on his account in the First National Bank and made payable to Morton-Gregson Company.

In January, 1918, Kleeberger began the practice of altering the statements of accounts against the plaintiff by changing the footings or totals of the accounts, so as to show a much larger amount than was actually due. Plaintiff did not check up these statements, but accepted them as correct and drew his checks therefor. When Kleeberger began this practice, he did not deposit these checks to the credit of the Morton-Gregson Company in the Omaha National Bank, but indorsed on them the name of Morton-Gregson Company, per B. F. Kleeberger, and deposited them in his private account in the State Bank of Omaha. He would then draw a check upon his own account, payable to Morton-Gregson Company, for the amount actually due the company and deposit this check in the Omaha National Bank to the credit of Morton-Gregson Company. This practice continued for more than two years before it was dis-

covered.   The amounts so paid by plaintiff to Kleeberger in excess of the   amounts   due   Morton-Gregson   Company amounted in the aggregate to nearly $3,000.

Kleeberger was called as a witness in behalf of defendants and admitted his fraudulent conduct, and that he had raised the footings of the statements without any authority from his principal.   On cross-examination he claimed that he did not personally profit by his perfidy; that he used the excess collections received from plaintiff in adjusting claims of other customers of Morton-Gregson Company for shortage, spoilage, etc.   Such claims, however, were not submitted to his principal for adjustment, and Morton-Gregson Company had no knowledge either of the excess collections at the time they were made, or that Kleeberger was adjusting claims of customers for alleged shortage, spoilage, etc.; nor had the company authorized him to make such adjustments.

Plaintiff contends that Morton-Gregson Company is liable to him for the excess collections upon two grounds: (1) That the acts of Kleeberger in presenting the altered and raised statements of account and in making the excess collections were within the apparent scope of his employment; and (2) that the company is estopped to deny liability, since the excess collections were used in discharging claims of other customers against it.

So far as the latter claim is concerned, we think it wholly devoid of merit.   Kleeberger was not authorized to adjust any claims for shortage, spoilage, or any other kind of claim, against his principal.   Whether these claims were just or unjust is not shown, and whether or not they would have been allowed, if they had been presented to Morton-Gregson Company, is a matter of mere speculation.   Under the evidence, it does not appear that any valid or just claims against Morton-Gregson Company were paid and discharged by Kleeberger out of the excess collections.   So far as appears, Morton-Gregson Company has not profited in any manner by the fraudulent acts of its agent.   It has

not accepted any benefits on account thereof.  No facts appear that would create an estoppel.

Whether the acts of Kleeberger in altering and raising the statements of account and collecting excessive amounts, which he appropriated to his own use, can be said to be within the ostensible or apparent scope of his authority is a more serious question.  While the statements of account were correctly made out at the home office and sent to Kleeberger for collection, the latter, when he presented the altered and raised statements of account to plaintiff, was certainly acting for and on behalf of his principal, and was within the line of his employment.  So far as plaintiff was concerned, Kleeberger, to all appearances, stood as the agent and representative of Morton-Gregson Company, and was acting within the apparent scope of his authority.  Morton-Gregson Company was without question a reputable business concern, and plaintiff, we think, was justified in the belief that its agent was reliable and trustworthy, and was warranted in the belief that the trusted agent of the Morton-Gregson Company was presenting accurate and true statements of his account.  That he relied on the statements as being accurate and true was beyond question.  We think he was justified in so acting.  The fraud was perpetrated by Kleeberger while acting within the apparent scope of his authority.

In *McFadden v. Lynn,* 49 Ill. App. 166, it is held: "A principal holding out an agent as having authority to represent him, and thereby asserting or impliedly admitting that the agent is worthy of trust and confidence, is bound by all his acts within the apparent scope of the employment. Hence, the principal may be held for the fraudulent acts of the agent."

In *Commercial Union Assurance Co. v. State,* 113 Ind. 331, it is held: "An insurance company must bear a loss sustained by the misconduct or disobedience of its agent, acting within the scope of his authority, rather than the assured, who has dealt fairly with him as such, without notice."

This court has held in *Bull v. Mitchell*, 47 Neb. 647, 654; "Where one of two innocent persons must suffer through the misfeasance of the agent of one, that one must suffer who has placed the agent in a position to perpetrate the fraud complained of." The rule above laid down is re-affirmed in *Rehmeyer v. Lysinger*, 109 Neb. 805.

In *Adams v. Cole*, 1 Daly (N. Y.) 147, it is said: "A general agent or clerk employed to make sales of goods and require payment therefor, who obtains payment of false bills by fraud or deceit, held, as acting within the scope of his employment, and his principal is liable for the amount thus obtained, especially where there is some evidence, however slight, that the agent paid the sum collected to his employer."

*Birkett v. Postal Telegraph-Cable Co.*, 107 App. Div. (N. Y.) 115, is a case quite similar to the one under consideration. In that case plaintiff was accustomed to send telegrams through the Postal Telegraph Company and at the end of each month to pay the agent of the company the amount due, as shown by the statements presented by the agent. The agent padded the statements and in the course of four years collected a large sum in excess of the true amount. The agent remitted the true amount to the company, as did Kleeberger in the case under consideration. The plaintiff in the *Birkett* case had a list of the tariffs and charges of the company and might have, from an examination thereof, ascertained the amount which should have been paid, but he relied upon the accuracy of the statements as presented. The court held in that case that the agent was acting within the scope of his agency in receiving the money for the benefit of defendant, and that the defendant company was liable for the fraud perpetrated by its agent.

The case of *Wilmerding v. Postal Telegraph-Cable Co.*, 118 App. Div. (N. Y.) 685, was a similar case. In that case the plaintiff, when desiring to send a telegram, called one of defendant's messengers, who came and took the message and delivered it for transmission according to the

general practice, and the next day the messenger would present a statement on a slip of paper to the cashier of the plaintiff, who would pay the amount and take the receipted slip. Defendant's messenger forged slips and presented them to the cashier of plaintiff who paid them. In that case the court, in the course of the opinion, said (p. 687) : "The question is, is the defendant responsible to the plaintiffs for the dishonesty of its messengers? It is conceded that so far as the genuine slips are concerned, made out by the defendant's agent, Morrell, in charge of its office and given by him to the messengers, they were thereby constituted the agents of the defendant for the purpose of collecting from the plaintiffs the amounts due for services rendered as appeared upon the face of such slips. * * * But the defendant claims that these messengers were not in any sense the general agents of defendant; that their employment was limited to the presentation of the genuine slips as given to them by the general agent, Morrell, and the collection of the sums called for thereby, and that when they forged slips and upon such forged slips collected and appropriated the sums apparently called for they acted independently and outside of their respective agencies, and that, therefore, the defendant is not liable for such fraudulent conduct. It seems to me that this contention is not sound; that the liability of the principal does not depend upon the general agency of the agent but upon the question whether the acts done were within the apparent scope of the authority of the agent, and that when it had clothed these messengers with the power to present slips and receive payment therefor, it is responsible for the wrongful acts of such agents committed in that kind of work. The fictitious slips were intermingled with the genuine. They were both presented by the same boys to the same assistant cashier in the same ordinary way in which the dealings between the parties had been conducted for a very considerable period of time. The plaintiffs had the right to assume that the agents of the defendant, admittedly employed by it and clothed with the power to collect

money on the presentation of slips, were honest and that the slips presented by them were genuine. * * * An employer who has put it within the power of his employee to defraud a third person by intermingling fraudulent and genuine bills and collecting money therefrom should be held responsible to an innocent third party for the dishonesty of his employee."

From a consideration of these authorities, we are constrained to hold that Kleeberger was acting within the *apparent scope* of his authority, and that his principal must be held responsible for his fraudulent conduct in raising and collecting excessive amounts from the plaintiff.

The defendant suggests that the State Bank of Omaha was not justified in cashing the checks when presented by Kleeberger, but we think that is not a matter that affects the right of plaintiff to recover in this case. If the bank was not justified in cashing the checks when presented by Kleeberger, Morton-Gregson Company may have a right of action against the bank for its negligence in cashing the checks. We are not called upon to decide that question in this case.

For the reasons given above, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Agency, 2 C. J. p. 495, sec. 115, p. 627, sec. 264.