[Civ. No. 2884.  Third Appellate District.—April 3, 1925.]

## RICHARD A. JOY et al., Respondents, v. ARTHUR F. ROUSSEAU, Appellant.

[1] CONTRACTS—ASSIGNMENT OF CONTRACT OF SALE OF REAL PROPERTY — PROVISION FOR PRORATING OF INTEREST — CONSTRUCTION—PAROL TESTIMONY.—Where an agreement providing for the assignment of a contract of sale of real property contained a provision that it was made "subject to a prorating of interest" on the assigned contract "as of this date to be adjusted when interest is received," and thereafter a sum of money was deposited on behalf of the party who was obligated to make payments on the assigned contract, in a bank to the credit of the assignee without any directions whatsoever, in an action by the assignors to recover their *pro rata* of interest up to the date of the assignment out of the sum so deposited, on the theory that they were entitled to the same under said provision, in view of the claim of the assignee that the assignors were not to be paid until he had received moneys specifically paid to him as interest, parol testimony was properly admitted of the surrounding circumstances of the transaction and of the conversations which took place between one of the assignors and the assignee, at the time of the execution of the agreement, and at the time the provision in question was inserted in the agreement.

[2] ID.—AMBIGUITY OF LANGUAGE—CONSTRUCTION—EVIDENCE.—Where the language used is ambiguous, or fairly susceptible of either one of two interpretations contended for, parol testimony is always admissible for the purpose of construing the agreement, according to the true intent of the parties at the time of its execution. Under this rule, not only the surrounding circumstances, but the conversations of the parties may be introduced in evidence and considered by the court.

[3] ID.—DEPOSIT OF SUM TO CREDIT OF ASSIGNEE—FAILURE TO MAKE APPLICATION—SUIT BY ASSIGNORS TO RECOVER PRO RATA OF INTEREST—SECTION 1479, CIVIL CODE.—In such action, where no designation or further application of the sum deposited to his credit had been made by the assignee at the time of the beginning of the action, and, at the time of the deposit, the interest claimed by the assignors had been entirely earned, the trial court, under section 1479 of the Civil Code, which provides that the court shall make application of payments where the parties have not so done, was justified in awarding the assignors their *pro rata* of interest, notwithstanding that the time of payment of either interest or of any installment of principal on the assigned contract had not arrived when the money was so deposited to the credit of the assignee.

[4] ID.—WORDS AND PHRASES—"DUE."—The word "due" has a double meaning.

[5] ID.—DEBTOR AND CREDITOR—INDEFINITE PAYMENTS—APPLICATION OF.—Where indefinite payments are made by a debtor to his creditor to whom he owes different obligations, and neither party makes any application of the payments, the law will make the application in such a manner, in view of all the circumstances of the case, as is most just and equitable, and will protect and maintain the rights of both parties.

[6] ID.—WORDS AND PHRASES—"PRO RATA" AND "ADJUSTED."—The words *"pro rata"* and "adjusted" have double meanings. The word *"pro rata"* means to distribute as well as allot; and the word "adjust" means to fix, to arrange, to ascertain and settle, and when used in reference to a liquidated claim, it has the meaning of settle in the sense of pay.

2. Parol evidence to explain mercantile contract, notes, 6 **Am. St. Rep.** 678; 28 **Am. Rep.** 210.

Admissibility of evidence of conversation expressly referred to in written contract, note, 32 **L. R. A. (N. S.)** 383. See, also, 10 **R. C. L.** 1065; 10 **Cal. Jur.** 938.

4. Legal meaning of "due," note, **Ann. Cas.** 1918E, 782.

5. Application of payments, notes, 13 **Am. Dec.** 505; 14 **Am. Dec.** 694; 96 **Am. St. Rep.** 44. See, also, 21 **R. C. L.** 97; 20 **Cal. Jur.** 936.

6. Meaning of *"pro rata"* or "prorate," note, **Ann. Cas.** 1918C, 791.

**[7]** ID.—MEANING OF WORDS—PAROL TESTIMONY.—In such action, for the purpose of ascertaining also the meaning in which the words "prorating of interest" and "adjusted," found in the provision in question, oral testimony of the surrounding circumstances and the conversations of the parties at the time of the execution of the agreement, and at the time the provision in question was inserted therein, was admissible.

(1) 22 C. J., p. 1180, n. 60, p. 1182, n. 73, p. 1186, n. 95.  (2) 22 C. J., p. 1180, n. 60, p. 1182, n. 73, p. 1186, n. 95; 30 Cyc., p. 1239, n. 23.  (3) 30 Cyc., p. 1239, n. 28, p. 1242, n. 36.  (4) 19 C. J., p. 818, n. 34, 35, 36, p. 819, n. 37, 38; 30 Cyc., p. 1249, n. 80, 81, p. 1250, n. 82, 83, p. 1251, n. 91, 92.  (5) 30 Cyc., p. 1241, n. 35. (6) 1 C. J., p. 1237, n. 32, 33, 33 New, 37; 32 Cyc., p. 686, n. 46 New, 47.  (7) 22 C. J., p. 1199, n. 46.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Walter H. Robinson for Appellant.

Everts, Ewing, Wild & Everts, Gavin McNab and Nat Schmulowitz for Respondents.

PLUMMER, J.—This action was begun to secure judgment for the sum of $7,035.28 on account of interest accrued on a certain contract of sale of real property from the last prior interest date to the date of the assignment of the contract of sale, said sum being claimed as the *pro rata* to which the plaintiffs were entitled out of payments aggregating the sum of $15,000. The record discloses the following: On or about March 8, 1918, one Charles M. Pusey, being the owner of a certain vineyard situate in the county of Fresno, contracted with Alfreda Verwoert for the sale thereof for the sum of $123,000, payable in installments. On the thirtieth day of July, 1919, the said Verwoert agreed to sell, subject to the first-named contract, the same real property to George Noroian for the sum of $200,000, payable in installments. On or about August 12, 1920, the said George Noroian, by an instrument in writing agreed, subject to the previous contracts, to sell and convey the same

property to the Planters Company, a corporation, for the sum of $365,000, payable partly in cash, the remainder in installments. Thereafter and prior to the transactions had with the defendant herein, the said George Noroian transferred his interest in the agreement herein referred to and the profits to be received therefrom to the plaintiff Richard A. Joy. Thereafter, and on or about the seventh day of April, 1921, the said Richard A. Joy sold and transferred to the defendant Arthur F. Rousseau, all and singular, his interests in and to said lands and premises, the contract relating thereto and the profits to be realized therefrom. In the agreement executed between the plaintiffs and the defendant there appears the following: "In consideration of the payment and agreements herein contained by said party of the first part, said parties of the second part agree to transfer and assign by good and sufficient instruments, such as may be required by counsel of the party of the first part, all the right, title and interest of George Noroian, and his wife derived by them under said agreement dated July 30th, 1919, and all the benefits to be derived by said George Noroian and his wife pursuant to said agreement of August 12th, 1920, hereby guaranteeing that such interests shall be in accordance with the representations herein contained and shall be subject to the provisions of said agreements of March 8th, 1918; July 30th, 1919, and August 12th, 1920, and subject to a prorating of interest on said last-named agreement as of this date to be adjusted when interest is received." Thereafter, and during the months of August and September, there was deposited with the French-American Bank, to the credit of the defendant, Arthur F. Rousseau, the sum of $5,000, by one E. Y. Foley, to which the Planters Company had assigned the crops growing on the premises covered by the agreement to that value, with the direction to deposit the same to the credit of the defendant. After learning of the deposit of said sums to the credit of the defendant, the plaintiffs demanded of the defendant payment of interest on the assigned contract, calculated up to the date of the assignment thereof, claiming that the contract provided for such payment. The defendant alleging that he had received no amounts as interest, declined payment, and thereupon the plaintiffs instituted this suit and recovered

judgment for the amount claimed.  From this judgment the
defendant appeals.

The whole controversy hinges around the interpretation
of the following words in the clause of the contract hereto-
fore quoted, to wit: "and subject to a prorating of interest
on said last-named agreement as of this date to be adjusted
when interest is received."  The court interpreted these words
to mean that payment of the interest accrued on the agree-
ment transferred and assigned by the plaintiffs to the de-
fendant should be paid as soon as the defendant received
sufficient moneys on said contract to discharge the same.
On the part of the defendant it is contended that the ac-
crued interest on the contract at the rate of the assignment
was not to be paid until he, the defendant, had received
from the Planters Company moneys specifically paid as in-
terest.  The $15,000 herein referred to was paid by Foley
from the proceeds of the crop grown by the Planters Com-
pany to the French-American Bank, and directed to be
placed to the credit of the defendant without any directions
whatsoever.  The testimony in the transcript, we think,
shows that no designation or further application of such
payments had been made by the defendant at the time of
the beginning of this action.  It appears that some time
elapsed after said moneys were deposited to the credit of
the defendant, before the defendant knew the exact amount
thereof.  [1] Under the circumstances, the plaintiff claim-
ing one interpretation of the contract and the defendant a
different one, oral testimony was introduced and admitted
of the surrounding circumstances of the transaction and
of the conversations which took place between the plaintiff
Richard A. Joy and the defendant, at the time of the exe-
cution of the contract, and at the time the words which
we are considering were inserted in the contract.  It ap-
pears from an inspection of the record and by the testi-
mony that the contract, as first drawn, did not contain the
last-quoted words, but the same was inserted by the defend-
ant, at the time the conversation was had concerning the
prorating of the interest and the time of its payment.  The
transcript shows that at the time of the execution of the
agreement between the plaintiff and the defendant, the plain-
tiff, Richard A. Joy, asked the defendant, "What about
the interest I am to receive.  Didn't you agree to pay me

the interest on this contract?" The defendant replied, "Yes, we have agreed that I should pay this interest to Mr. Joy." Mr. Joy then asked, "When am I to get this interest?" and the defendant answered, "As soon as there is any money paid, I will give you your money." There was some other testimony as to prorating the attorneys' fees, etc., which are immaterial here.

The defendant claims that this testimony is not admissible, under the rule that a written contract cannot be altered by parol evidence. In relying upon this contention we think the appellant has misconceived the purpose of the testimony. [2] Where the language used is ambiguous, or fairly susceptible of either one of two interpretations contended for, such testimony is always admissible for the purpose of construing the agreement, according to the true intent of the parties at the time of its execution. Under this rule, not only the surrounding circumstances, but the conversations of the parties may be introduced in evidence and considered by the court. In *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 Pac. 876], this question is fully considered and the law thus stated: "For the purpose of determining what the parties intended by the language used, it is competent to show not only the circumstances under which the contract was made, but also to prove that the parties intended and understood the language in the sense contended for; and for that purpose the conversation between and the declarations of the parties during the negotiations at and before the time of the execution of the contract may be shown," citing Code Civ. Proc., secs. 1860, 1861; *Atlanta* v. *Schmeltzer*, 83 Ga. 609 [10 S. E. 543]; *Keller* v. *Webb*, 125 Mass. 88 [28 Am. Rep. 209]; *Long* v. *Long*, 44 Mo. App. 141; *Swett* v. *Shumway*, 102 Mass. 365 [3 Am. Rep. 471]. The rule also seems to be that where the debtor has made no designation, the creditor, if entitled to make application, must make the application before suit is brought. (*Haynes* v. *Waite*, 14 Cal. 446; *United States* v. *Kirkpatrick*, 9 Wheat. (U. S.) 720 [6 L. Ed. 199]; *Pierce* v. *Knight*, 31 Vt. 701.) [3] The court not only interpreted the contract according to the expressed views of the parties at the time of the execution of the agreement, but also followed, as fully as may be, the provisions of section 1479 of the Civil Code, wherein it is

specified that the court shall make application of payments, where the parties have not so done, as follows: 1. Of interest due at the time of the performance; 2. Of principal due at that time; 3. Of the obligation earliest in date of maturity; 4. Of an obligation not secured by a lien or collateral undertaking; 5. Of an obligation secured by a lien or collateral undertaking.

On the part of the appellant it is contended that the court had no authority so to do. To support this allegation considerable argument is made upon the meaning of the word "due," it being contended that there was not any interest due on the contract in question, either at the time of the assignment thereof, or at the time of the deposit of the said $15,000 to the credit of the defendant. It is true that the time of payment of either interest, or of any installment of principal had not arrived when the moneys just referred to were so deposited to the credit of the defendant. That date was fixed at a considerable time subsequent to the receipt of the $15,000. **[4]** The word "due" has a double meaning. In 19 Corpus Juris, page 818, we find the following definition given of this word; "According to the consensus of judicial opinion, the word has a double meaning: 1. That the debt or obligation to which it applied has by contract or operation of law become immediately payable; 2. A simple indebtedness, without reference to the time of payment, in which it is synonymous with 'owing,' and includes all debts, whether payable *in praesenti* or *in futuro*. In its larger sense the word is often used to cover liabilities matured and unmatured, or as importing an existing obligation, whether the time of payment has arrived or not." To the same effect are a number of other definitions there given, and numerous authorities cited in support thereof. See, also, *Crocker-Woolworth National Bank* v. *Carle,* 133 Cal. 409 [65 Pac. 951], where the double meaning of the word is also considered. A somewhat similar case is presented in that of *Monroe* v. *Fohl,* 72 Cal. 568 [14 Pac. 514]. The note there involved was dated June 25, 1885, and the interest made payable annually. On October 10th of the same year the defendant paid $800 on the note without anything being said as to whether the same should be applied to the interest or principal. The court said: "Conceding, in favor of the defendant, that the payment was to

be applied first to the interest, it will be so only as to interest up to the date of the payment. The balance of the payment must be applied to the principal. The law will not apply it to future or unearned interest.'' In the case at bar, at the time of payment, the interest claimed by the plaintiffs had been entirely earned. In 30 Cyclopedia, 1249, section 11, the text, in relation to interest where payments are made without designation or election, reads: ''Except where otherwise agreed, a payment made on an indebtedness consisting of principal and interest, not applied by either the debtor or creditor, will be applied first to the interest due and then to the principal. If neither principal nor interest is due, some cases hold that the payment must be applied to the principal, but the weight of authority holds that it should be applied to the extinguishment of principal and such proportion of interest as has accrued on the principal so extinguished''; and, further, where the rights of third parties are involved, the text reads: ''So where the court is called upon to appropriate payments, the equities of third persons, although not controlling, should be considered. Of course, the parties cannot apply a payment to an invalid debt,'' etc. In *Murdock* v. *Clarke,* 88 Cal. 384 [26 Pac. 601], the court holds that, where the rules prescribed by section 1479 of the Civil Code are not sufficient, the application must be made according to equitable principles. [5] The law is thus stated: ''It is the settled law in this country, wherever the common law prevails, that where indefinite payments are made by a debtor to his creditor to whom he owes different obligations, and neither party makes any application of the payments, the law will make the application in such a manner, in view of all the circumstances of the case, as is most just and equitable, and will protect and maintain the rights of both parties,'' citing a number of cases.

We think in this case an equitable application of the rules set forth in section 1479 of the Civil Code has been made. Were we to hold otherwise, it would be possible for the entire principal of the contract to be paid and the plaintiffs debarred from obtaining or collecting a cent of the interest agreed to be paid them under the terms of the contract which we have quoted.

[6]    The words *"pro rata"* and *"adjusted"* have double meanings.    The word *"pro rata"* means to distribute as well as allot.    In the agreement under consideration the active form of the word is used, the expression being "prorating of interest."    The word "adjust" means to fix, to arrange, to ascertain and settle, and "when used in a liquidated claim, it has the meaning of settle in the sense of pay." (1 Cor. Jur., 1237.)

[7]    For the purpose of ascertaining also the meaning in which these words were used we think the oral testimony hereinbefore referred to was admissible.    The judgment is affirmed.

Jones, J., *pro tem.,* and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 1, 1925.

All the Justices present concurred.