NAPP v.
LIBERTY NATIONAL LIFE INSURANCE COMPANY

No. 42827          December 16, 1963          159 So. 2d 164

*Roy Noble Lee,* Forest, for appellant.

*O. B. Triplett, Jr.,* Forest, for appellee.

JONES, J.

Appellant, the widow of Clayton K. Napp, sued appellee in the Circuit Court of Scott County on a policy of insurance issued by appellee on the life of her husband, in which policy appellant was beneficiary. The policy was for the face amount of $1,000 with a double indemnity clause in event of accidental death. The insured was accidentally killed in an automobile accident and the suit arose under the circumstances hereafter shown. At the conclusion of the evidence, the lower court gave a peremptory instruction for the appellee. We think this was error and the case is reversed and remanded.

The policy was issued as a result of the solicitation of an agent of the company named Henry. It was dated January 30, 1961, and the insured was killed April 16, 1961. The facts herein stated were shown by appellant and her witnesses.

On the day Mr. Napp was buried, Mrs. Napp was at her mother's home and Mr. Henry, the agent, came and told her her husband had been paying on a policy; that "it had gone out of the grace period for eighteen hours," but he was going to try to get it to go through. He returned two and three times a week until, finally, on Thursday, May 30, he reported he had a call to come to the office in Meridian and he believed they were going to pay, although he did not know for sure. He talked to appellant, her mother and father, and advised them he believed she would not get anything but for an actual death benefit because it was "out of the grace period"; that one thousand dollars would be

all she would receive. On Saturday morning he told her he had been to the office and they had a check made out for $1,000, and he told them (the company) that rather "than bring me a check for a thousand dollars, he would lay his books down and quit his job," when she was expecting the full amount. Appellant told him that if she could not get any more than that, she guessed she would have to be satisfied with it. He said if that was suitable, he would go back to the office and get the check.

On Monday morning he came back to her mother's home where she, her mother and father were present, and there he told them he had been successful; the policy had gone through and paid off, but it was only for $1,000; but before she accepted it, he wanted to talk to her mother and father. He asked if it were agreeable to take the $1,000 since they were not going to pay $2,000, and the mother answered that they would have to be satisfied with it. That was in the morning, and after drinking coffee, he took the appellant in his car to the bank to deposit the money. Appellant had a car of her own but Mr. Henry took her in his car to the bank. He did not show the check to her before they went to town. She first saw the check when he pulled up at the bank, and as he started to get out of the car he gave it to appellant and she then saw the check was for $2,000. When he gave her the check he said he wanted to explain something to her before they went in the bank — he told her they made a mistake in writing the check and "you will have to deposit a thousand dollars and withhold a thousand for me to turn back into the office." Appellant told him that would be all right.

Appellant quit school in the ninth grade and had never transacted any business of this or a similar nature. She had never had a bank account and had never written a check. Mr. Henry went into the bank with her and

she told the banker she would like to deposit it and open a bank account. He asked how she wanted the money put on deposit. She had forgotten exactly what Mr. Henry told her about it, so she looked at him and he told the banker that she wanted "to deposit a thousand and withhold a thousand." The banker, Mr. Mitchell, asked who he was and he replied he was the agent for the insurance company that had written the policy.

A deposit slip was issued in her name showing $2,000, less $1,000, leaving a balance of $1,000 in the bank, and $1,000 in cash was counted out to her. When they got in the car to return to her mother's Mr. Henry told her, "I'll take the money now," and she handed it to him. He thereupon carried her back to her mother's house and stayed there about an hour. He helped her make out checks, fix her check book, and collected a premium on another policy issued on her and the children. On this occasion, Mr. Henry also took from her a receipt for $2,000 in full settlement and satisfaction of all claims and demands under the policy in question. This receipt is on a blank furnished by the company and is filled out for the sum of $2,000, although there is some question as to whether the $2,000 was inserted at the time of signature.

There was introduced in evidence the written contract between Henry and appellee, in which it was stated: "Your authority hereunder is limited to soliciting applications for insurance and the submission of same to the home office for acceptance or rejection, and the collection of premiums on policies in force in your debit."

At the conclusion of the testimony and after hearing the evidence of Mr. Henry, who denied having received the money from appellant but admitted delivering the check, carrying her to the bank and obtaining the receipt, the lower court sustained a motion for a peremptory instruction for appellee, evidently on the ground

that his actions were not within the scope of his authority, and that he had received the money after he had completed the delivery of the check.

The court overruled the appellant's motion for a peremptory instruction, which was proper, but refused to grant the appellant an instruction submitting the question to the jury.

It is undisputed that the company elected to have Mr. Henry deliver the check for $2,000 and secure a recept therefor, and he would not have closed the matter without the receipt. Sec. 5706, Miss. Code of 1942, as applicable here, provides:

"Every person who solicits insurance on behalf of any insurance company, . . . . or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, . . . . . shall be held to be the agent of the company for which the act is done . . . . as to all the duties and liabilities imposed by law. . . ."

■■ ■ The word "adjust" as relating to claims or demands when used in reference to a liquidated claim has the meaning of "settle" in a sense of pay. 2 C.J.S., p. 51; Joy v. Rousseau, 236 P. 972, 975, 72 Cal. App. 179; State v. Staub, 61 Conn. 553, 23 Atl. 924; Combination Oil & Gas Co. v. Brady, (Tex. Civ. App.) 96 S.W. 2d 415.

■■ ■ It is plain that the company, instead of mailing the check for $2,000 to appellant, gave it to Mr. Henry with instructions to deliver it to her and secure a full release for the company. He was to pay her $2,000, which was the company's liability to her. He was aiding in the adjustment of this loss.

This evidence would justify a finding by the jury that he was an agent of the company under the statute and the common law. The company could not delegate to one certain duties and then deny agency because the written contract between them limited his activities to

other matters. Cf. Aetna Ins. Co. v. Lester, 170 Miss. 353, 154 So. 706. The misrepresentation by the agent began not after the delivery of the check but prior thereto and the matter culminated in the payment to him for the company, according to appellant's testimony, of the sum of $1,000 so that in effect there was only paid to her the sum of $1,000 in settlement of the company's obligation of $2,000.

It is argued that the agent, if he was an agent, was acting without the scope of his authority real or apparent, and that the company could not foresee that the agent would commit an act of this sort. We do not think foreseeability of such an act is a test in a case of this kind. As was held in Billups Petroleum Co. v. Hardin's Bakeries Corp., 217 Miss. 24, 63 So. 2d 543: " 'It is well settled that the principal is liable for the frauds and misrepresentations of his agent within the scope of the authority or employment of the agent, even though he had no knowledge thereof and has received no benefit therefrom.' 2 Am. Jur., p. 281, Agency, par. 352. 'The principal is liable to third persons for injuries resulting from the fraud and deceit of his agent if such is within the scope of the agent's authority. Acts of fraud by the agent, committed in the course or scope of his employment, are binding on the principal, even though the principal did not know of or authorize the commission of the fraudulent acts, and although he derives no benefit from the success of the fraud, and the agent committed it for his own benefit.' 3 C.J.S., p. 190, Agency, par. 257.' '

The cases cited in the Billups case and the Billups case itself were ones where the agent had collected more than he was supposed to collect. In the instant case, the agent paid less than he was supposed to pay. If the appellant's testimony be accepted as true, then the company has not paid its debt.

The case is reversed and remanded for a new trial.
Reversed and remanded.

*Kyle, Gillespie, McElroy and Rodgers, JJ.,* concur.