RANDOLPH, Justice,
dissenting:
¶ 23. As no employee’s duty involves stealing, the Majority, like the circuit court, properly concludes that Tate’s fraudulent conduct was not “within the scope of employment,” as her “misdeeds were for her own personal gain and were of no benefit to Golden Triangle.” (Maj. Op. at ¶ 21). Unfortunately, the vicarious-liability analysis of both the Majority and the circuit court is limited to the re-spondeat superior standard outlined in Section 228 of the Restatement (Second) of Agency. In cases involving employee negligence or wrongful conduct, like those relied upon by the Majority,[5] such an analysis is quite appropriate. However, “[sjcope of employment does not define the only basis for employer liability under agency principles. In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment. The principles are set forth in the much-cited § 219(2) of the Restatement. ...” Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998). See also Jones v. B.L. Dev. Corp., 940 So.2d 961, 967 (Miss.Ct.App.2006) (citation omitted) (“[a] master is subject to liability for the torts of his servant committed outside the scope of employment if the servant was aided in accomplishing the tort by the existence of the agency relation.”); Faragher v. City of Boca Raton, 524 U.S. 775, 801-02, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
¶ 24. In employee theft/dishonesty/fraud cases, such a different analysis is required. See Napp v. Liberty Nat’l Life Ins. Co., 248 Miss. 320, 159 So.2d 164 (1963); Billups Petroleum Co. v. Hardin’s Bakeries Corp., 217 Miss. 24, 63 So.2d 543 (1953). In cases of this genre, the standards outlined in Sections 219(2)(d) and 261 of the Restatement (Second) of Agency apply. Considering those Restatement sections, in the context of the record presented, I conclude that genuine issues of material fact exist regarding whether Tate was “aided in accomplishing the tort by existence of the agency relation” such that Golden Triangle could be held vicariously liable for Tate’s fraudulent conduct. Restatement (Second) of Agency § 219(2)(d) (1958). As such, the circuit court erred in granting Golden Triangle’s motion for summary judgment.
¶25. According to Akins’s complaint, “Tate was acting as an employee and cogent of Golden Triangle and therefore, Golden Triangle is liable for the actions of [Tate] in wrongfully directing ... monies be paid to J-Max Construction.” (Emphasis added.) No reference to respondeat superior is made. Golden Triangle later summarized Akins’s cause of action in its “Memorandum of Authorities in Support of Defendant’s Motion for Summary Judgment,” when it stated that “Akins’[s] sole theory of recovery against Golden Triangle is that Tate was employed, by Golden Triangle when the funds were allegedly directed, and that Golden Triangle is therefore liable for the actions of Tate.” (Em *583 phasis added.) However, Golden Triangle then proceeded to conflate distinctive theories of vicarious liability when it added “[i]n other words, Akins seeks to hold Golden Triangle vicariously liable under the doctrine of respondeat superior.” In so doing, Golden Triangle effectively submersed the broader principle of vicarious liability to restrict its application to only one of its bases, respondeat superior.[6]
¶ 26. The circuit court and the Majority endorsed this restrictive application in their holdings, i.e., whether Tate’s fraudulent conduct was “within the scope of employment,” pursuant to the respondeat superior standard set forth in Section 228 of the Restatement (Second) of Agency. The Majority fails to address Sections 219(2)(d) and 261 of the Restatement (Second) of Agency, which control the case before us. See Restatement (Second) of Agency §§ 219(2)(d), 261 (1958).
¶ 27. Section 219(2) of the Restatement (Second) of Agency lists four situations in which conduct “outside the scope of ... employment” provides a basis for imposing vicarious liability. Restatement (Second) of Agency § 219(2). According to Section 219(2)(d):
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
[[Image here]]
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.
Id. at § 219(2)(d) (emphasis added). “The first clause establishes an employer’s vicarious liability for the torts of employees based on the doctrine of ‘apparent authority,’ while the second creates liability for an employer whose agent ‘was aided in accomplishing the tort by the existence of the agency relation.’ ”[7] Doe v. Forrest, 176 Vt. 476, 853 A.2d 48, 56 (2004) (quoting Restatement (Second) of Agency § 219(2)(d)). “The commentary to the Restatement provides, by way of examples, *584 that a telegraph company may be held liable for a tort committed by a telegraph operator who sends a false telegraph message, as may the undisclosed principal of a store whose manager cheats a customer.” LaRoche v. Denny’s, Inc., 62 F.Supp.2d 1366, 1373 (S.D.Fla.1999) (citing Restatement (Second) of Agency § 219 cmt. (e)).
¶ 28. Section 261 of the Restatement (Second) of Agency provides that “[a] principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.” Restatement (Second) of Agency § 261. Comment (a) to Section 261 adds that:
[t]he principal is subject to liability under the rule stated in this Section although he is entirely innocent, has received no benefit from the transaction, and, as stated in Section 262, although the agent acted solely for his own purposes. Liability is based upon the fact that the agent’s position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him.
Restatement (Second) of Agency § 261 cmt. (a) (1958) (emphasis added). See also Entente Mineral, 956 F.2d at 527 (“[u]n-like § 228, § 261 assesses vicarious liability even though the agent’s conduct was not actuated by a purpose to serve the principal.”).[8]
¶ 29. In Entente Mineral, the Fifth Circuit noted that:
[although Mississippi case law has not expressly differentiated between the two types of vicarious liability found in § 219(1) and § 219(2) of the Restatement, the distinction is implicit. Hence, cases imposing liability under the theory embraced by § 219(1) and defined in § 228, require the agent’s conduct to be for the principal's purposes; while other cases, under the theory embodied in §§ 219(2)(d) and 261, allow liability even when an agent acts solely for his own purposes. Compare [Seedlcem South[9]] with [Billups Petroleum] and [Napp ].
Entente Mineral, 956 F.2d at 527.
¶ 30. In Billups Petroleum, this Court stated that:
“[i]t is well settled that the principal is liable for the frauds and misrepresentations of his agent within the scope of the authority or employment of the agent, even though he had no knowledge thereof and has received no benefit therefrom. ...” 2 Am.Jur. p. 281, Agency, § 362. “The principal is liable to third persons for injuries resulting from the fraud and deceit of his agent if such is within the scope of the agent’s authority. Acts of fraud by the agent, committed in the course or scope of his employment, are binding on the principal, even though the principal did not know of or authorize the commission of the fraudulent acts, and although he derives no benefit from the success of the fraud, *585 and the agent committed it for his own benefit.” 3 C.J.S., Agency, § 257, p. 190.
Billups Petroleum, 63 So.2d at 546 (emphasis added). In holding Hardin’s Bakeries vicariously liable for its agent’s fraud, this Court determined that “the fraud was committed by the agent ... while acting within the scope of his employment, and in our opinion the loss should fall on the principal who is liable for the act of the agent, and not upon the customer who has been defrauded.” Id. at 547-48.
¶ 31. The four cases discussed and relied upon by this Court in Billups Petroleum were: Birkett v. Postal Telegraph-Cable Company, 107 A.D. 115, 94 N.Y.S. 918 (N.Y.A.D. 4 Dept.1905); Wilmerding v. Postal Telegraph-Cable Company, 118 A.D. 685, 103 N.Y.S. 594 (N.Y.A.D. 1 Dept. 1907); Cleaney v. Parker, 167 Ala. 134, 51 So. 951 (1910); and Berkovitz v. Morton-Gregson Company, 112 Neb. 154, 198 N.W. 868 (1924). In Birkett, an agent of Postal Telegraph:
padded the statements of a customer and over a period of years collected a large sum in excess of the true amount due.... The agent ... retained the balance that he had wrongfully collected from the customer.... The court held that the agent was acting within the scope of his agency in receiving the money for the benefit of the defendant, and that the defendant was liable for the fraud perpetrated by its agent.
Billups Petroleum, 63 So.2d at 547 (citing Birkett, 94 N.Y.S. at 919-20). In Wilmerding:
the Court held that the plaintiff had a right to assume that the agents of the telegraph company admittedly employed by it and clothed with the power to collect money on the presentation of slips, were honest, and that the slips presented by them were genuine, and that where the defendant’s messenger had forged slips and presented them to the plaintiffs cashier who paid them[,] the company was liable. The Court in that case said: “[a]n employer who has put it within the power of his employe[e] to defraud a third person by intermingling fraudulent and genuine bills and collecting money therefrom should be held responsible to an innocent third party for the dishonesty of his employe[e].”
Billups Petroleum, 63 So.2d at 547 (quoting Wilmerding, 103 N.Y.S. at 597). In Cleaney, the employer of a newspaper agency was held liable for money extorted from a customer in excess of the price of the articles purchased. See Cleaney, 51 So. at 952. The Alabama Supreme Court:
stated that while the agent may have exceeded, and probably did exceed his authority, and violated the instructions of his principal when he collected the extra money from the customer, “yet it was clearly within the line and scope of his authority in such manner as to render the defendants liable to plaintiff for such tort of the agent; while it was the tort of the agent, as between him and his principals, it was the tort of both, as between them arid the plaintiff.”
Billups Petroleum, 63 So.2d at 546 (quoting Cleaney, 51 So. at 952) (emphasis added). In Berkovitz, a salesman for Morton-Gregson Company obtained merchandise orders from Berkovitz. See Berkovitz, 198 N.W. at 868. Without Morton-Gregson Company’s knowledge or authorization, the salesman began altering Berkovitz’s account statements to show larger amounts than were actually due. See id. at 869. Such amounts were then collected by the salesman from Berkovitz. See id. Thereafter:
[i]n an action by Berkovitz against Morton-Gregson Company to recover the amount of the excess collections so *586 made, the [Nebraska Supreme] Court held that [the salesman], in presenting the altered statements of account, was acting in the line of his employment and within the apparent scope of his authority, and that Morton-Gregson Company was liable to Berkovitz for his loss, occasioned by the fraud of [the salesman],
Billups Petroleum, 63 So.2d at 547 (citing Berkovitz, 198 N.W. at 868).
¶ 32. In Napp, this Court considered the argument of the defendant-life insurance company “that the agent, if he was an agent, was acting without the scope of his authority real or apparent, and that the company could not foresee that the agent would commit an act of this sort.”[10] Napp, 159 So.2d at 166. This Court, relying upon Billups Petroleum and the cases cited therein, disagreed and found that the “foreseeability of such an act” is not the applicable test. Id. Rather, in reversing and remanding for a new trial, this Court held that “the agent paid less than he was supposed to pay. If the appellant’s testimony be accepted as true, then the company has not paid its debt.” Id. (emphasis added).
¶ 33. Subsequently, the Fifth Circuit addressed Billups Petroleum and aptly stated that:
[contrary to some of the language in the ... ease, the principal’s liability is based on the theory embodied in §§ 219(2)(d) and 261 of the Restatement, rather than traditional “scope of employment” liability contained in § 219(1). The four cases the Billups [.Petroleum ] court discusses in support of its holding evidence that the court imposed § 219(2)(d) liability. Each of the four cases involves fraud by an agent upon the principal’s customer. Each case involved a situation in which the principal delegated to the agent the power to perform a certain task, such as collect monies for the principal. In each case, the agent acted for his own purposes, but the fraud transpired as part of the very duty that the principal authorized the agent to perform. Because the customers had a relationship with the principal that induced the customers to rely on the principal’s agent, and the agent defrauded the customers in the performance of the duty entrusted to him by the principal, the agent ivas “aided in accomplishing the tort by the existence of the agency relation.”
Entente Mineral, 956 F.2d at 529 (quoting Restatement (Second) of Agency § 219(2)(d)) (emphasis added). In sum:
[t]he proper inquiry for determining vicarious liability of a principal whose agent defrauds the principal’s customer is the relationship between the principal and the customer. In Billups [Petroleum], the four cases it discusses, and Napp, the principal had a relationship with the customer and the customer was defrauded by the principal’s agent. The courts reasoned that a principal who provides his agent with the tools or position necessary to perpetrate a fiuud on the principal’s customers, should be held responsible to the innocent customers who relied on the agent.
Entente Mineral, 956 F.2d at 529 (emphasis added). See also Jones, 940 So.2d at 967; Hardwicke v. American Boychoir School, 188 N.J. 69, 902 A.2d 900, 920 (2006); Doe, 853 A.2d at 57; Forum Fin. Group v. President and Fellows of Harvard Coll., 173 F.Supp.2d 72,101 (D.Maine 2001).
*587 ¶ 34. Golden Triangle acknowledges that it administered the HOME program. Golden Triangle then delegated to Tate, as housing specialist for the HOME program, the power to perform the following tasks, inter alia: advertising and soliciting bids from third-party contractors to construct homes; receiving invoices from contractors; reviewing inspector reports certifying the percentage of work completed on individual homes; and requesting cash allotments from counties and municipalities, which were paid with HOME funds.[11]
¶ 35. In the course of performing her tasks, which she was authorized by Golden Triangle to perform, Tate “acted for [her] own purposes....” Id. While this “was the tort of the agent, as between him and his principals,” there is also a genuine issue of material fact as to whether it “was the tort of both, as between them and the plaintiff.” Cleaney, 51 So. at 952. If Akins can prove that he “had a relationship with [Golden Triangle] that induced [him] to rely on [Golden Triangle’s] agent, [Tate,] and [Tate] defrauded [Akins] in the performance of the duty entrusted to [her] by [Golden Triangle],” Entente Mineral, 956 F.2d at 529, I conclude that genuine issues of material fact exist regarding whether Tate was “aided in accomplishing the tort by the existence of the agency relation.” Restatement (Second) of Agency § 219(2)(d) (1958). As such, the trial court erred in granting Golden Triangle’s motion for summary judgment. Therefore, I respectfully dissent.
DICKINSON, LAMAR AND CHANDLER, JJ., JOIN THIS OPINION.

. See Commercial Bank v. Hearn, 923 So.2d 202 (Miss.2006); Gulledge v. Shaw, 880 So.2d 288 (Miss.2004). See also Seedkem South, Inc. v. Lee, 391 So.2d 990, 994-95 (Miss.1980) (a negligent-conduct case in which an employee's "nine hour beer drinking spree" was deemed a "frolic” outside the scope of his employment, such that Seedkem South could not be held liable under respondeat superior).

. Akins incorrectly accepted this restriction and offered only the respondeat superior, Section 228 of the Restatement (Second) of Agency, argument, although he also raised the seminal cases that are dispositive of the issue before this Court. This Court cannot overlook that among the authorities cited by Akins in his "Memorandum of Authorities in Support of Plaintiff’s Motion for Summary Judgment” and Appellant’s Brief are employee theft/dishonesty/fraud genre cases, Billups Petroleum and Napp, which are directly on point with the issue before this Court. See Napp, 159 So.2d at 164; Billups Petroleum, 63 So.2d at 543. Billups Petroleum and Napp do not rely on a Section 228 analysis, but implicitly rely upon the analysis set forth in Sections 219(2)(d) and 261 of the Restatement (Second) of Agency, as discussed supra. See Entente Mineral Co. v. Parker, 956 F.2d 524, 527 (5th Cir.1992).

. In Faragher:
[t]he City ... argue[d] that the second qualification of the subsection, referring to a servant "aided in accomplishing the tort by the existence of the agency relation,” merely "refines” the one preceding it, which holds the employer vicariously liable for its servant’s abuse of apparent authority.... But this narrow reading is untenable; it would render the second qualification of § 219(2)(d) almost entirely superfluous (and would seem to ask us to shut our eyes to the potential effects of supervisory authority, even when not explicitly invoked). The illustrations accompanying this subsection make clear that it covers not only cases involving the abuse of apparent authority, but also cases in which tortious conduct is made possible or facilitated by the existence of the actual agency relationship.
Faragher, 524 U.S. at 801-02, 118 S.Ct. 2275. See also Ellerth, 524 U.S. at 759-60, 118 S.Ct. 2257 (distinguishing the two theories outlined in Section 219(2)(d)).

. The doctrines of respondeat superior and apparent authority do overlap, but not perfectly. See Charles Davant IV, Employer Liability for Employee Fraud: Apparent Authority or Respondeat Superior?, 47 S.D.L. Rev. 554, 566, 568-69 (2002); Grease Monkey Int'l, Inc. v. Montoya, 904 P.2d 468, 473 (Colo.1995) (citation omitted) (”[a]pparent authority liability is not based upon the rules of responde-at superior, and it is not 'essential to find that the agent was motivated by an intent to act for his master’s purposes.’ ”).

. See footnote 5, supra.

. The subject action was that the agent was to deliver a $2,000 check from the defendant-life insurance company to Napp, but instead the agent made misrepresentations resulting in only $1,000 being received by Napp, with the agent receiving the remaining $1,000. See Napp, 159 So.2d at 165-66.

. According to Count 47 of the indictment against Tate, to which she pleaded guilty, the HOME funds "were in the care, custody, and control of” Golden Triangle.