**YOARS v. NEW ORLEANS LINEN SUPPLY CO. *'**

**No. 17091.**

Court of Appeal of Louisiana. Orleans.

Jan. 10, 1939.

*Rehearing denied Feb. 6, 1939; writ of certiorari denied by Supreme Court March 6, 1939.

Thos. H. McGiehan, of New Orleans, for appellee.

Marcel Remson and Alvin R. Christovich, both of New Orleans, for appellant National Linen Service Corporation.

McCALEB, Judge.

Fred Yoars, doing business in the City of New Orleans under the name of Best Ice Cream Company, brought this suit against the New Oreans Linen Supply Company, allegedly a Louisiana corporation, for the recovery of $1325.70, representing overpayments made by him to the defendant's agent, one Milton Henry Leman, for the rental of certain gowns and towels supplied to him by the defendant for use in his business.

Citation and a copy of plaintiff's petition were duly served upon the New Orleans Linen Supply Company by leaving the same at its office in the hands of its Assistant Manager. In due course, a corporation, alleging itself to be National Linen Service Corporation, chartered under the laws of the State of Delaware, appeared in the capacity of owner and operator of the New Orleans Linen Supply Company, and filed an exception of no right or cause of action to the petition. After hearing argument on this exception, the district court referred it to the merits of the case. Thereafter, the said National Linen Service Corporation filed an answer to the petition alleging that it was the owner and operator of the New Orleans Linen Supply Company (the named defendant) and denying that the latter was a corporation. It admitted that the New Orleans Linen Supply Company had, during the period alleged in plaintiff's petition, rented to the plaintiff various quantities of gowns and towels; that this merchandise had been delivered to plaintiff by its agent Leman and that the rental price thereof had been collected by Leman who was, at all times, acting within the course and scope of his employment. It denied, however, that the New Orleans Linen Supply Company had overcharged the plaintiff for the rental of the towels and gowns supplied to him and averred alternatively that, if it be shown that any amount was paid by plaintiff to Leman in excess of the amount actually due for the linens received, it did not get any part of such overpayment; that it had no knowledge or information in regard thereto and that it was not responsible therefor. It further averred in the alternative that, should it be found that Leman defrauded the plaintiff by collecting excessive payments, then plaintiff should not be permitted to recover for the reason that he was negligent in not checking the merchandise actually delivered in order to ascertain that he was not paying for more than he received.

The case proceeded to trial on these issues and the district judge, after hearing the evidence, gave judgment in favor of plaintiff and against the New Orleans Linen Supply Company for the sum of $1295.60. From this adverse judgment, the National Linen Service Corporation applied for and was granted a suspensive appeal to this court.

■ We notice at the outset that the party sued and cast in the judgment below is the New Orleans Linen Supply Company and that the appeal has been taken and perfected by the National Linen Service Corporation. It has been suggested that we are without jurisdiction of the case since the New Orleans Linen Supply Company has failed to appeal. After due consideration of this question, we are satisfied that the matter is properly before us. The appellant (National Linen Service Corporation) has alleged that it is the owner and operator of the New Orleans Linen Supply Company (the named defendant) and that it is aggrieved by the judgment rendered against the latter. This showing is in itself sufficient to give us jurisdiction in view of the provisions of Art. 571 of the Code of Practice, which reads:

"The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment." ·

Aside from this, we are convinced that the National Linen Service Corporation is the real defendant in the suit—for, while the action was instituted (and judgment granted) against the New Orleans Linen Supply Company, allegedly a corporation, that concern has never appeared, whereas the appellant, claiming to be the owner and operator of the named defendant, came into court voluntarily and resisted the plaintiff's demand. The case proceeded to trial on the issue thus joined by the plaintiff's petition and the answer filed by the appellant and the named defendant was never considered as a real party by either litigant or the trial judge until after the rendition of the judgment.

The position of the appellant may be regarded as analogous to that of an intervener in the suit. It is certainly not a stranger to the proceeding since the litigation in the court below was conducted as a case by the plaintiff against it and we hold that, in any event, it has shown sufficient pecuniary interest in the outcome of the suit to sustain its right of appeal.

We therefore pass on to a consideration of the merits of the case. The facts are not in dispute and we find them to be as follows:

The plaintiff, Fred Yoars, operates about 25 retail stores throughout the City of New Orleans under the trade name "Best Ice Cream Co." where he retails ice cream and other dairy products manufactured by him. His principal office and factory are located at 1133 Magazine St. In the pursuit of his business, plaintiff requires the use (each day) of a large quantity of towels and gowns for his employees which, for a long period of time, have been supplied to him by the New Orleans Linen Supply Company on a rental basis of 20¢ each for the gowns and 1½¢ each for the towels.

During the month of May 1937, the New Orleans Linen Supply Company had in its employ a delivery or routeman named Milton Henry Leman, whose duties were to deliver linens, which would be rented by the defendant to various customers, and to collect their rental price upon delivery. The Best Ice Cream Company was one of the defendant's customers served by Leman on his route. The procedure adopted by the defendant in the rental of linens to its customers was that each morning the routeman would be supplied with a specific quantity of linens and he would call upon the users of these linens and deliver to the latter whatever amount of towels, gowns, etc., they desired. Upon the delivery of the linens, it was incumbent upon the routeman to receive payment for the rental in cash or by check and at the end of the day, when he had finished his rounds, he would return to defendant's place of business and account for the rented linens by payment to the defendant of the amount he received and he would also return the linens which he had been unable to dispose of. In this way, the defendant was always able to have a balanced account at the end of each day of the monies received by its routeman. To illustrate—if Leman left defendant's place of business in the morning with 5000 towels and 500 gowns and returned in the evening with 1000 towels and 100 gowns, he was compelled to account to the defendant for the rental price of the 4000 towels and 400 gowns which he had delivered to customers during the day.

Leman proved to be a dishonest employee. Early in May 1937, he devised a scheme by which he was able to defraud the plaintiff, over a period of six months, of approximately $1300. He knew that the Best Ice Cream Company used anywhere from 100 to 500 towels and 25 to 100 gowns each day. He was also acquainted with the fact that, when deliveries of mer-

chandise were made to plaintiff's supply room (to which Yoars had granted him free access), the towels and gowns brought by him were not being counted by plaintiff or any of his employees. Taking advantage of plaintiff's failure to check his deliveries, Leman adopted a method whereby he would make out a fictitious C. O. D. slip for, say, 500 towels and 100 gowns and receive payment from the plaintiff for that amount, whereas, in truth, he would actually deliver to plaintiff's supply room a much smaller quantity of merchandise. Upon his return to his employer's place of business at the end of each work day, Leman would account to the defendant for the correct amount of towels and gowns he had rented to the plaintiff and appropriate the excess payments to his own use. The manner in which he operated was such that his employer could not detect his dishonesty since he always settled with it for the exact amount of goods rented by him while on duty.

The system employed by Leman was continuous from day to day and it was so successful that, as above stated, he was able to extract from plaintiff a total of about $1300 in excess payments during a period of six months. In the early part of November 1937, when there was a seasonal drop in ice cream sales, the plaintiff, finally realizing that he was paying for more linen than the amount which should have been required for use in his business at that time of the year, became suspicious and caused an investigation to be made. When Leman was confronted with the fact that the amounts paid to him by the plaintiff were greatly in excess of the sums received by the defendant, he readily confessed his duplicity. This suit followed.

The problem presented for our solution is whether, under the state of facts above set forth, the plaintiff is entitled to hold the defendant responsible for the fraud perpetrated upon him by Leman.

▮▮▮ Preliminarily, we find no difficulty in resolving that Leman, as the agent of the New Orleans Linen Supply Company, was acting for and on behalf of his principal in all of his dealings with the plaintiff. We also hold that, as a matter of law, the fact that defendant was without knowledge of Leman's peculations and did not benefit as a result thereof is likewise insufficient to excuse it from liability for the consequences of his deceit. The test in determining the responsibility of a principal in this type of case is whether the agent was clothed with the apparent authority to perform the acts which resulted in the loss and not whether he was actually vested with such authority. See Gleason v. Seaboard Airline Ry. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415; overruling Friedlander v. Texas & Pacific Ry. Co., 130 U.S. 416, 9 S.Ct. 570, 32 L.Ed. 991; Berkovitz v. Morton-Gregson Co. et al., 112 Neb. 154, 198 N.W. 868, 33 A.L.R. 85; Birkett v. Postal Teleg. Cable Co., 107 App.Div. 115, 94 N.Y.S. 918, and Wilmerding v. Postal-Teleg. Cable Co., 118 App.Div. 685, 103 N.Y.S. 594.

In the American Law Institute's restatement of the law of agency, Chap. 7, Sec. 261, it is stated: "A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."

And Sec. 262 reads: "A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him, under the rule stated in Section 261, is not relieved from liability by the fact that the apparent agent acts entirely for his own purposes, unless the other has notice of this." See, also, 3 Corpus Juris Secundum, Agency, §§ 231 and 257, and General Finance Co. v. Veith, La.App., 177 So. 71.

Disposal of the foregoing point in plaintiff's favor leads us to a consideration of the most serious question raised by the defendant. It maintains that, while, under ordinary conditions, it would be liable for the wrongs committed by Leman, the plaintiff should not be permitted to recover in this case, since he has contributed, by his own carelessness, to the fraud perpetrated upon him and that if he had used any diligence whatsoever he would have readily detected Leman's misrepresentations. In other words, it claims that, if the plaintiff had checked the number of towels and gowns received by him each day against the C. O. D. slips which were presented for payment, it would have been impossible for the agent Leman to commit the wrong.

We find much force in this argument. It seems clear that the plaintiff was grossly negligent in paying each day for large deliveries of merchandise without making a check of the linens when they were brought to his place of business. It should

be borne in mind that plaintiff conducted a large business and that the linens he used in the operation of it represented a monthly expense in excess of $200. Notwithstanding this, although he was paying out over twice that amount each month, he did nothing and was content to rely upon his belief in the honesty of defendant's agent. Albeit, he proclaims that he had the legal right to depend upon the reliability of defendant's agent and was not required to take any precautions whatsoever to guard against his false representations. Assuming that a buyer may ordinarily rely upon the honesty of the seller's agent, we entertain grave doubt that the doctrine should apply where the former could have, by common sense precautions, easily ascertained that he was being defrauded. Here it appears that, for a period of six months, the dishonest agent was filching over $200 per month from the plaintiff by the use of fictitious C. O. D. slips. Simple prudence demanded that plaintiff check the merchandise he received. If he had done so the fraud could not have been committed. It was entirely within his power to discover the agent's deceit as the method employed by the wrongdoer was such as to preclude from the defendant the opportunity of ascertaining the true situation. Would it be just to hold the defendant under such circumstances?

 There is an equitable principle which we think should be invoked in cases like the instant one—that is—that where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed upon him who most contributed to it. This rule has ofttimes been applied by our Supreme Court. See Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85, and cases there cited. Under ordinary conditions, in cases where a fraud has been committed by an agent, the rule has been invoked against his principal for the reason that the employer, by clothing the agent with apparent authority to act for him, has made the accomplishment of the fraud possible. But the doctrine applies with equal force against the defrauded third person where it appears he could have easily detected the deceit and neglected to do so for, under such circumstances, his fault must be regarded as the proximate and efficient cause of the loss. It cannot be gainsaid that, as between the parties litigant in this case, it was the plaintiff who most contributed to Leman's fraud by his failure to use ordinary diligence in checking the goods delivered to him against the C. O. D. slips.

In Brooks v. Gray-Von Allmen Sanitary Milk Co., 211 Ky. 462, 277 S.W. 816, 46 A.L.R. 1207, is found a case where the circumstances of the agent's fraud are practically on all fours with the facts of the instant matter. There, it appeared that the defendant, a wholesale dealer in milk, employed one Tucker as one of its drivers to make deliveries and receive payment for the goods. Many deliveries of milk were made by Tucker to the plaintiff. The plaintiff had in its employ a receiving clerk and a paying clerk. The former would check off the items of merchandise delivered by Tucker as contained in the ticket bill therefor and, after ascertaining its correctness, he would O. K. it by subscribing his name thereto. Defendant's driver, Tucker, was supposed to take that particular bill ticket, as approved by the receiving clerk, to plaintiff's paying clerk who would pay the face amount of the bill on the faith of the endorsement of the receiving clerk. Tucker, being dishonest, devised a scheme to defraud the plaintiff. He would make up a fictitious bill whereupon was listed a much larger quantity of milk, butter and other milk products than that delivered to the receiving clerk and place this fictitious bill under a carbon of the correct bill so that, when the receiving clerk would sign and endorse O. K. upon the original, the approval for payment would appear, by virtue of the carbon, upon the fictitious bill. After Tucker had obtained the carbon signature and O. K. of the receiving clerk, he would then present this fictitious bill to the paying clerk and in this manner, during a period of years, he received payments of approximately $7000 over and above the amounts which were actually due for merchandise delivered to the plaintiff. Upon discovery of the fraud, plaintiff sued the defendant, Tucker's employer, for the amount of overpayments. The court, in holding that the defendant was not liable, based its decision on two grounds—(1) that Tucker, when he committed the theft, was not acting within the course and scope of his employment and (2) that, assuming that he was, the defendant was nevertheless not responsible because the plaintiff was guilty of negligence in its failure to discover the fraud. While we feel that the first reason upon

which the holding is founded is inapposite to the great weight of authority, we are impressed with the soundness of the latter view as expressed by the court in the following language [page 819]:

"Moreover, it is doubtful if plaintiff could recover under the facts alleged, if we entertained a different opinion from that above expressed. It will be observed that it is alleged in the petition that the method of doing business by plaintiff was that his receiving clerk would indorse the bill of merchandise purchased from defendant each day, and that the latter's servant would present that bill to plaintiff's paying clerk. If that was true, it is difficult for us to see wherein it could be held that either one or both of plaintiff's agents were free from negligence. Surely, for the long length of time during which the frauds were perpetrated, the receiving clerk would discover the existence of a duplicate bill, as well as a carbon sheet, under the one he was signing; and, if so, ordinary care would seem to require of him that such a duplicate bill corresponded with the original one, and which would undoubtedly be true if it was his duty to indorse them in duplicate. However, if that was not true and it was the duty of the paying clerk to honor only the original bill, then it was negligence on his part to pay one which was indorsed by only a carbon signature, and which character of signature was discoverable by the slightest inspection."

The facts of the cited case cannot be distinguished from the instant one. Leman delivered daily to the plaintiff a large quantity of towels and gowns. The latter granted him full access to the delivery room and if he had taken the slightest precaution of checking the goods delivered with the C. O. D. tickets the fraud could not have occurred. It is true that the plaintiff in his testimony says that he did check the deliveries on 10 or 15 occasions and found that they were all right. His statement is not convincing in view of the fact that the frauds which were committed daily continued for a six month period and if he had made any reasonable check of the goods received against the C. O. D. slips, he could not have failed to discover the fact that he was being cheated.

During the argument of the case, counsel for plaintiff asserted that the defendant was guilty of negligence, with respect to the fraud of Leman, in that on some occasions Leman received checks from plaintiff which were deposited to defendant's account and that these checks represented payments of larger amounts than that appearing on defendant's books. The checks referred to by counsel are not part of the record and for this reason we are unable to discern whether his statement is correct. It therefore follows that the point cannot be considered.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be and it is dismissed at his cost.

Reversed.

WESTERFIELD, Judge (dissenting).

In my opinion there is nothing before the Court. The appellant attempts to appeal from a judgment in which it was not cast and to which it is a stranger. Such an appeal is not authorized by Code of Practice, Article 571 because, as is recognized by the majority opinion, the appellant is not a third person, having defended the suit below as though it was party-defendant. While it does not affirmatively appear that the New Orleans Linen Supply Company, the actual defendant against whom judgment was rendered, is a corporation, because the matter was not put at issue below except by way of allegation in the petition and denial in the answer, the fact is immaterial, since the question could only become important if and when an attempt should be made to execute the judgment. The fact remains that no judgment was ever rendered against the National Linen Service Corporation, the Delaware Corporation which has attempted to appeal from a judgment against the New Orleans Linen Supply Company.

Nor do I agree with the conclusions of my colleagues upon the merits. The plaintiff was the victim of a dishonest employee of the defendant, for whose acts the defendant is admittedly responsible. The failure of the plaintiff to constantly check the actions of this dishonest employee does not seem to me sufficient to place the loss resulting from his dishonest conduct of defendant's business upon the innocent plaintiff, whose only fault was too much confidence in the reliability of defendant and the integrity of its employee.

I respectfully dissent.