McINNIS, Judge.
On January 18, 1950, May Finance Company of Detroit, Michigan, sold under a conditional sales contract, to Lavon Nagy a 1947 Oldsmobile 8, Club Sedan, Motor No. 8-71403H, Serial No. 9850749 for a total price of $1,620.71, on which was paid $312.95, leaving a balance due of $1,307.76, which was to be paid in 24 installments of $54.49 on the 18th day of each succeeding month. Nagy’s residence is given in the sales contract as 23061 Oak Park, Oakland, Michigan. According to the petition he made no payments, but, instead, removed the car to Louisiana without the consent or knowledge of plaintiff. The record discloses that the original title certificate by the Secretary of State of Michigan was delivered to plaintiff and a duplicate was issued and delivered to Nagy. Both the original and duplicate showed the certificate issued in the name of Nagy, showed a chattel mortgage to plaintiff for $1,307.76, but the manner in which it was to be paid is not shown. On the face of the duplicate certificate is a rubber stamp “Paid By ■-.” and the date March 2, 1950 and the initials “J. M.” added to the paid stamp. On the reverse side the certificate .is endorsed by Nagy in blank and it is also endorsed in blank “E. Mawby”, and a bill of sale was executed by Mawby on March 23, 1950 to Narvis J. Lee, in which it is stated that there is no mortgage on the car and no money is due on the purchase price. The consideration for the sale is recited as $1,010.
Prior to April 17, 1950 plaintiff had been trying to find Nagy and the car and the Police Department of Shreveport found it in the possession of Lee, and told him there was some question about it and that he would be notified in two days if there was anything wrong about it. He did not hear any more about it and on April 17, 1950. sold it to John Thomas Adams in exchange for a lot on the Meriwether Road in Caddo. Parish. ■
On April 18, 1950 plaintiff filed ' suit against Nagy and Lee, claiming ownership of the car, and praying that it be sequestered, and an order for sequestration was signed by the judge. Nagy was alleged to be a non-resident and John Paul Wood-ley, an attorney was appointed to represent him, and service of citation was made the same day, but the citation to Lee was not served until May 23, 1950'; however, the car was found to be in possession of Adams, and he was' requested to go to the office of the Automobile Recovery Bureau in Shreveport on April 23, 1950, and while some one there talked to him the Sheriff was notified and the car was seized by the Sheriff’s Deputy.
In a supplemental petition it is alleged that under Michigan Statute and cases cited, title to the car remains in the seller or his assignee, until the. contract is fully performed, and that a warrant was issued in Detroit for the arrest of Wesley E. Mawby, charging that he embezzled, fraudulently removed, concealed or disposed of the car, and on information and belief that Mawby and Nagy are one and the same person, and that Lee had been informed that plaintiff had a first lien and privilege on the car, and was, in fact, the owner of it, at the time he transferred it to Adams.
On June 27, 1950 plaintiff made a motion to release the car to it upon furnishing bond, and it was ordered released on $1,500 bond, and sold at auction.
*154 Defendant Lee filed an exception of no cause and no right of action levelled at the original and supplemental petitions. The exception was overruled, and he then answered, denying all the allegations of the petitions, and alleging his good faith and lack of knowledge of the claim of plaintiff, and that 'he had sold the car before the suit was filed. On January 31, 1952 the curator for Nagy filed an answer in the form of general denial.
January 22, 1951 John Thomas Adams filed an intervention claiming he bought the car from Lee April 17, 1950 in good faith for the consideration of a lot described in the petition, which he conveyed to Lee, and that Lee had a valid title to the car, but if he did not, he asks in the alternative, if plaintiff prevails, that, in that event, he have judgment against Lee, restoring to him title to the lot. February 5, 1951 Adams filed a pleading asking that the record in Suit No. 105,398, John T. Adams v. Narvis J. Lee, be made a part of his petition of intervention, but the suit is not in this record and is not mentioned again. November 21, 1951, inter-venor filed a supplemental petition, seeking to make National Surety Corporation (surety on the bond for release of the car) a party defendant to his intervention, but was dismissed on exception of no cause and no right of action.
Lee filed exception of no cause and no right of action to the petition of intervention, which exception was overruled. He then answered the petition of intervention, admitting the allegations.
Plaintiff answered the petitions of intervention denying for lack of information, all of the allegations.
On these issues the case was tried on January 31, 1952, and on April 21, 1952 judgment was rendered and on May 16, 1952 it was signed, in favor of plaintiff and against the defendants, Lavon Nagy and Narvis J. Lee and against the intervenor, John T. Adams, decreeing plaintiff to be the owner of the car, and releasing it from the judicial sequestration bond. The judgment is silent as to the demand of Adams, intervenor, against Lee.
After a motion for a new trial was filed by Lee, and overruled, he and Adams were granted suspensive and devolutive appeals.
Plaintiff offered proof that it held the conditional sales contract and chattel mortgage, which was duly recorded as required by the Statutes of the State of Michigan and that it had not consented to the removal of the car from the State, and had no knowledge of its removal until some time after it had been removed. An attorney of the State of Michigan testified as to the law of the State on the effect of chattel mortgages and conditional sales contracts, and his testimony is to the effect that under the provisions of Act No. 305 of 1939, no title passes by an attempted transfer by the holder of an automobile under a conditional sales contract unless the lien is paid.
It appears that both Lee and Adams were in good faith in the transactions. Lee showed the duplicate title certificate to his attorney, who accepted the paid stamp on it, but also took the precaution to secure a “Bill of Sale” from Mawby, setting forth that there was no mortgage on the car nor anything due on the purchase price. However, unfortunate as it may be for them, it appears that their good faith cannot avail them. Several cases have been decided by our Appellate Courts wherein ownership under conditional sales contracts 'have been recognized though not recorded here, and also chattel mortgages not recorded here, when the property has been removed without the consent of the title or chattel mortgage holder. A late case involving this question is Fisher v. Bullington, La.App., 56 So.2d 321, which was decided adversely to the contention of plaintiff here, but solely on the theory that consent had been given'for the removal of the car from Illinois. Judge Gladney dissented from the decree affirming the judgment of the district court, and assigned written reasons in which he cited many decisions of our courts upholding his conclusions. It is hardly necessary to repeat them here. After rehearing was denied plaintiff applied to the Supreme Court for writs of certiorari etc., and writs were *155 granted, but no decision has yet been handed down by the Supreme Court.
We are of the opinion that a little more care on the part of Lee and his counsel would have revealed the want of title in Mawby, who is -apparently the same person as Nagy. The title certificate exhibited to Lee was a duplicate, and dated March 1-3, 1950 and the paid stamp was dated March 2, 1950, eleven days before the date of the certificate.
“It is a widely recognized principle that wherever one of two innocent persons must suffer by the acts of a third, he who by his conduct, act, or omission has enabled such third person to occasion the loss must sustain it.”
31 C.J.S., Estoppel, § 103; Haley v. Woods, 163 La. 911, 113 So. 144; Thompson v. Hibernia Bk. & Tr. Co., 148 La. 57, 86 So. 652; Allan Ware Pontiac, Inc., v. First Natl. Bank of Shreveport, La.App., 2 So.2d 76; General Finance Co. of La. v. Evans, La.App., 196 So. 581; Yoars v. New Orleans Linen Supply Co., La.App., 185 So. 525; Lawrence v. Sunrise Pet. Co., La.App., 163 So. 742; Reed v. Eureka Homestead Soc., La.App., 143 So. 891; Continental Jewelry Co. v. Weilbacher, 17 La.App. 420, 136 So. 110; DeSoto Wholesale Grocery Co. v. Pace, La.App., 34 So.2d 525; Port Finance Co. v. Ber, La.App., 45 So.2d 404.
We are of the opinion- that the inter-venor, Adams, should have prevailed in his demand against Lee for the annullment, of the sale of the lot made in payment for the car. Lee did not contest the demand but on the other hand admitted the allegations of the intervenor’s petition.
For the reasons assigned the judgment of the district court in so far as it rejects the demand of the intervenor against Lee is annulled and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the intervenor, John T. Adams and against the defendant, Nar-vis J. Lee, annulling and setting aside the conveyance from John T. Adams to Narvis J. Lee of the following described property:
A parcel of land in the N% of Section 32, township 17 N. range 14 W., Caddo Parish, La. more fully described as follows: From the intersection of the southeast right-of-way line of the Texas & Pacific Railroad with the southwest right-of-way line of the Meriwether Road, run thence south 38 degrees, 0 minutes east along the southwesterly line of said road, 600 feet to the point of beginning of tract herein described. Run then south 40 degrees 0 minutes west and parallel to the center line of said Texas & Pacific Railroad 726 feet; run thence easterly a distance of 134.7 feet to a point; thence north 40 degrees 0 minutes east and parallel to the center line of said Texas & Pacific Railroad 676 feet to the southerly right-of-way line of the Meriwether Road, thence north 38 'degrees 0 minutes west along the southerly line of said road 120 feet to the point of beginning, containing 1.89 acres more or less.
In all other respects the judgment appealed from is affirmed. Costs of this appeal to be paid by Narvis J. Lee, defendant, appellant.