CHIASSON, Judge.
The plaintiff-appellee was successful in the trial court in securing a $7,680.00 judgment against the defendants, Ronald W. Wiseman and Brunson Bonding and Insurance Agency, Inc., for the issuance of a bogus performance bond. Plaintiff’s claim against American Fidelity Fire Insurance Company was dismissed. Only Brunson Bonding and Insurance Agency, Inc. has appealed this decision.
*386 In February of 1978, Ronald Wiseman, an employee of the Brunson Agency, presented a spurious document to the plaintiff which purported to be a valid performance bond issued by American Fidelity Fire Insurance Company and covering appellee for the construction of four warehouses for the Salvation Army in Baton Rouge. It was later discovered that the bond was invalid and plaintiff is seeking to recover the amount paid for this bond.
The plaintiff-corporation began operations in the fall of 1977. Robert Riley, owner of the corporation, had been employed in his father-in-law’s construction business prior to this time. As a new company, Riley had applied for bonds under the Small Business Administration program. Riley used Wiseman and the Brunson Agency for this purpose since he was familiar with them through his position with his father-in-law’s business.
Wiseman, for the Brunson Agency, sold Riley his first bond without any incident through Special Market Underwriters, Inc. which was an authorized agent for American Fidelity. American Fidelity issued nothing but bonds for the Small Business Administration. Wiseman handled all the Small Business Administration bonds for Brunson and was securing about $23,000.00 a month worth of premiums for Special Market Underwriters, Inc. Riley next contacted Wiseman concerning a bond he needed for the $190,000.00 project of the Salvation Army. Wiseman agreed to start the paper work on the bond.
Wiseman presented the bond to Riley in February of 1978, and, in turn, Riley gave Wiseman six blank payee checks to use in securing the bond. In April of 1978, the fraudulent scheme was detected and eventually Riley secured a valid bond from American Fidelity.
Plaintiff sued for the amount of money spent in obtaining the first bond in addition to increased cost for materials due to the delay in completing the warehouse project. In the alternative, he sued for the cost of the new bond if the first one was deemed to be valid.
The trial court found the first bond to be invalid and held Wiseman personally liable for his tortious conduct. It further found Brunson Agency liable as the employer of Wiseman, since his actions were in the course and scope of his employment. It denied cost for materials since no evidence was presented on that point.
Wiseman was not present at trial and a curator ad hoc had been appointed to represent him. No appeal was taken by Wise-man so the judgment as it relates to him is final.
In its brief on appeal, the appellant, the Brunson Agency, is contending that it should not be held liable for the criminal acts of its employee. It further contends that the trial court erred in not finding that the actions of Riley contributed to the fraudulent scheme. In the alternative, appellant contends the award given to Riley was excessive in the amount of $3,000.00.
It has been admitted by the Brunson Agency that Wiseman had been an employee of theirs for a number of years. With this employee-employer relationship established, we find Louisiana Civil Code Article 2320 to be applicable in this matter. La. C.C. art. 2320 provides, in part:
“Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
* * * * * *
“In the above cases, responsibility only attaches, when the masters or employers, * * * might have prevented the act which caused the damage, and have not done it.”
This article has been construed by the Supreme Court in LeBrane v. Lewis, 292 So.2d 216 (La.1974) and the jurisprudence as follows:
“In Louisiana, as elsewhere, an employer (master) is liable for a tort committed by his employee (servant) if, at the time, the servant is acting within the scope of his employment — acting, as our Civil Code Article 2320 phrases it, ‘in the exercise of *387 the functions in which . .. employed.’ Article 2320; Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968); Comment, 33 La.L.Rev. 110 (1972).”
In defining what is meant by “scope of employment,” the Court continued:
“In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer’s interests. It can thus be regarded as within the scope of the supervisor’s employment, so that his employer is liable in tort to third persons injured thereby.”
(Footnote omitted). LeBrane, supra, pg. 218.
Wiseman’s action was within the scope of his employment as found by the trial court. He had been empowered to write bonds and had done so for Mr. Riley. His actions, although personally motivated, were so closely interwoven with his employer’s business that it can be said to be “a risk of harm fairly attributable to the employer’s business.” Mays v. Pico Finance Co., Inc., 339 So.2d 382 (La.App. 2nd Cir. 1976). Therefore, we agree with the trial court’s finding that the Brunson Agency is liable as Wiseman’s employer for the tortious conduct of its employee. (See the discussion in Scoggins v. Smith, 342 So.2d 1130 (La.App. 1st Cir. 1977)).
We next need to consider the actions of Robert Riley as president of the corporation in dealing with Wiseman to determine if he, in any way, contributed to this fraudulent scheme. The principle of law that was announced in the Yoars v. New Orleans Linen Supply Co. case, 185 So. 525 (La.App. Orl.1939) is still sound:
“There is an equitable principle which we think should be invoked in cases like the instant one — that is — that where one of two innocent parties must suffer loss through the fraud of another, the burden of the loss should be imposed upon him who most contributed to it. This rule has ofttimes been applied by our Supreme Court. See Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85, and cases there cited. Under ordinary conditions, in cases where a fraud has been committed by an agent, the rule has been invoked against his principal for the reason that the employer, by clothing the agent with apparent authority to act for him, has made the accomplishment of the fraud possible. But the doctrine applies with equal force against the defrauded third person where it appears he could have easily detected the deceit and neglected to do so for, under such circumstances, his fault must be regarded as the proximate and efficient cause of the loss....”
Yoars, supra, pg. 529.
Appellant contends that Riley should have detected the illegality of the entire transaction when Wiseman called upon him to issue six blank payee checks within three days. Brunson points to the fact that Riley issued four of those checks even after the bond was delivered to him.
Cognizant of these facts, we do not find that Riley’s actions contributed to the fraud or that he was put on notice of the illegal actions of Wiseman. The most that can be said is that there was a misplacement of trust in one man.
The corporation was a brand new business with its first big job — the Salvation Army project. Riley needed a bond, larger than any previously obtained by him, and he called upon the insurance agent that he had done business with for a couple of years. Wiseman told him that he would start the necessary paper work. After a number of conversations, Wiseman informed Riley that since this was such a large bond for such a new corporation that he might have to secure the bond from outside the state. In February, Wiseman delivered a bond, valid looking on its face, to Riley. Riley immediately recorded the contract and the bond in the mortgage records so that he could commence work on the project. Trusting Wiseman to take care of *388 all the services and purchases required, Riley gave Wiseman checks issued in specific amounts but left blank the payee since he did not know who the bond was to come from.
The facts of this case can easily be distinguished from those in the Yoars decision where it was found that the plaintiff could have detected the fraudulent scheme by merely making periodic counts of towels and aprons that were being delivered to him. In this case, we are faced with a little more perplexing situation. Riley knew little of the bonding business and their practices. He had worked with the Brunson Agency while working with his father-in-law as well as when he started his own business. All of his insurance work was with the Brunson Agency, through its employee, Wiseman. He left most of the paper work to Wiseman when it came time to filling out the forms for these Small Business Administration bonds. When presented with the bond, there was nothing that would put him on notice of the invalidity of it.
Mr. Wiseman was appellant’s employee who was authorized to issue performance bonds for American Fidelity after getting approval from the New Orleans base, Special Market Underwriters, Inc. The Brunson Agency was aware that Wise-man had a supply of blank performance bonds of American Fidelity which could easily be used by Mr. Wiseman for any purpose. Appellant had no established system for checking or auditing the issuance of these performance bonds by Wiseman.
If it had not been for Wiseman’s wife, Brunson’s daughter, who handed over a box of materials to the agency, the scheme might not have been detected. We find that this unchecked procedure for issuance of performance bonds by Wiseman to be the cause of the illegal actions. The Brunson Agency was in a better position to detect the fraudulent scheme than was Riley. We agree with the findings of the trial court that Riley was not in a position to detect this fraudulent scheme.
The last contention of the appellant is the issue of $3,000.00 which Riley paid to Wiseman for professional services. The trial court had awarded Riley this amount in its judgment. Appellant argues that it should not be held liable for this amount as the Brunson Agency would never have received this money. We do not find any merit in this argument. We find the plaintiff proved that $7,680.00 had been fraudulently taken from it by the defendant, an employee of the Brunson Agency. Included within that figure is the $3,000.00 sum which is a part of the damages plaintiff is now seeking. The plaintiff has met its burden of proof and therefore is entitled to this amount. Appellant’s business practices, above outlined, made it possible for its employee to perpetrate the fraud.
For these reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.